UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBICON REAL ESTATE HOLDINGS, LLC,
BROWNE DESIGN CONSULTANTS, LLC
and JOSEPH BROWN,

        Plaintiffs,                        Case No. _____

-vs-                                    State Ct. No. 2023-198418-CZ

CITY OF PONTIAC, MICHIGAN and
GARLAND S. DOYLE, jointly and
severally,

        Defendants.

---

## NOTICE OF REMOVAL OF ACTION

Defendants, CITY OF PONTIAC and GARLAND DOYLE, by and through their attorneys, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., pursuant to 28 U.S.C. § 1446(d), hereby provide notice of removal of the instant matter from the Oakland County (Michigan) Circuit Court to the United States District Court for the Eastern District of Michigan, and further state in support of this removal:

1.   Plaintiffs filed their Complaint in the Oakland County Circuit Court on January 24, 2023, Case No. 2023-198418-CZ.

2.   Plaintiffs personally served Defendants with the attached Summons and Complaint on January 31, 2023. The undersigned represents all Defendants, who all concur in this removal.

3.   Plaintiffs' claims arise under the First and Fourteenth Amendments to the U.S. Constitution, alleging that Defendants deprived them of due process of law and equal protection of the law, that Defendants unlawfully retaliated against them for exercising their rights under the First Amendment; and that Defendants' actions amount to a taking of private property for public use without just compensation.

4.   Plaintiffs have invoked remedies under 42 U.S.C. § 1983 and seek equitable and injunctive relief, and damages.

5.   This Court has original jurisdiction of Plaintiffs' claims arising under the Constitution and laws of the United States. 28 U.S.C. § 1331.

6.   Defendants therefore remove this matter pursuant to this Court's removal jurisdiction under 28 U.S.C. § 1441, and the procedure set forth in 28 U.S.C. § 1446.

s/ Anne McClorey McLaughlin
Rosati, Schultz, Joppich & Amtsbuechler, P.C.
27555 Executive Drive, Suite 250
Farmington Hills, MI  48331
(248) 489-4100
amclaughlin@rsjalaw.com
P40455

DATED:  February 21, 2023

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN**<br>Oakland | JUDICIAL DISTRICT<br>**JUDICIAL CIRCUIT**<br>COUNTY PROBATE | **SUMMONS** | **CASE NO.**<br>2023- 198418-CZ |
|---|---|---|---|

Court address                                                                                    Court telephone no.

| Plaintiff's name(s), address(es), and telephone no(s).<br>Rubicon Real Estate Holdings, LLC<br>Browne Design Consultants, LLC<br>Joseph Brown | v | Defendant's name(s), address(es), and telephone no(s).<br>City of Pontiac, Michigan<br>47450 Woodward Avenue<br>Pontiac, Michigan 48342 |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.
Cindy Rhodes Victor (P33613)
Kus Ryan, PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan 48326
(248) 364-3090

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☒ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☒ this court, ☐ _____ Court, where

it was given case number  2021-187117-CZ  and assigned to Judge  Yasmine I. Poles  .

The action ☐ remains ☒ is no longer pending.

Summons section completed by court clerk.                    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).**
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>1/24/2023 | Expiration date*<br>APR 25 2023 | Court clerk<br>Lisa Brown |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19) **SUMMONS**                                                   MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**PROOF OF SERVICE**

| SUMMONS |
|---|
| Case No. 2022- 196823-CZ |

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

| Approved, SCAO | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| **STATE OF MICHIGAN** | | **CASE NO.** |
|---|---|---|
| Oakland | **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY PROBATE** | **SUMMONS** | 2023- 198418-CZ |

| Court address | Court telephone no. |
|---|---|

| Plaintiff's name(s), address(es), and telephone no(s).<br>Rubicon Real Estate Holdings, LLC<br>Browne Design Consultants, LLC<br>Joseph Brown | v | Defendant's name(s), address(es), and telephone no(s).<br>Garland S. Doyle<br>47450 Woodward Avenue<br>Pontiac, Michigan 48342 |
|---|---|---|

| Plaintiff's attorney, bar no., address, and telephone no.<br>Cindy Rhodes Victor (P33613)<br>Kus Ryan, PLLC<br>2851 High Meadow Circle, Suite 120<br>Auburn Hills, Michigan 48326<br>(248) 364-3090 | This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling. |
|---|---|

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☒ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☒ this court, ☐ _____ Court, where

it was given case number 2021-187117-CZ _____ and assigned to Judge Yasmine I. Poles _____.

The action ☐ remains ☒ is no longer pending.

Summons section completed by court clerk.     **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint **to file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court (28 days if you were served by mail or you were served outside this state).**
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>1/24/2023 | Expiration date*<br>APR 25 2023 | Court clerk<br>Lisa Brown |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**MC 01   (9/19)   SUMMONS**                                   MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**PROOF OF SERVICE**

**SUMMONS**
Case No. 2022- 196823-CZ

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

☐ **OFFICER CERTIFICATE**
I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:  (notarization not required)

OR

☐ **AFFIDAVIT OF PROCESS SERVER**
Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that:  (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |
|  |  |  |  | Title |

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____  Signature: _____
Date                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____ .
Signature

FILED   Received for Filing   Oakland County Clerk   1/23/2023 4:08 PM

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

| | |
|---|---|
| **RUBICON REAL ESTATE HOLDNGS, LLC, BROWNE DESIGN CONSULTANTS, LLC and JOSEPH BROWN,** | 2023-198418-CZ JUDGE YASMINE I. POLES |
| Plaintiffs, | Case No. 2023- _____-CZ |
| v | |
| **CITY OF PONTIAC, MICHIGAN and GARLAND S. DOYLE, jointly and severally,** | This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling. |
| Defendants. | **JURY TRIAL REQUESTED** |

CINDY RHODES VICTOR (P33613)
Kus Ryan PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan  48326
(248) 364-3090
Attorneys for Plaintiff

There is a prior resolved civil action in Oakland
County Circuit Court arising out of the transaction
or occurrence alleged in the complaint. *Rubicon Real
Estate Holdings, LLC et al v The City of Pontiac et al*, 2021-
187117-CZ, that was assigned to the Honorable Yasmine I. Poles

/s/  Cindy Rhodes Victor_____
CINDY RHODES VICTOR (P33613)

## **COMPLAINT**

Plaintiffs Rubicon Real Estate Holdings, LLC, Browne Design Consultants,

LLC and Joseph Brown, by and through their counsel, hereby state for their

claims against defendants the City of Pontiac, Michigan and Garland Doyle,

jointly and severally, as follows:

## THE PARTIES

1.      Plaintiff Rubicon Real Estate Holdings, LLC ("Rubicon") is a

Michigan limited liability company, doing business in Oakland County, Michigan.

2.      Plaintiff Browne Design Consultants, LLC is a Michigan limited

liability company, doing business in Oakland County, Michigan.

3.      Plaintiff Joseph Brown is an individual residing in Oakland County,

Michigan.

4.      Defendant the City of Pontiac ("the City") is a Michigan municipal

corporation located in Oakland County, Michigan.

5.      Defendant Garland S. Doyle, at all relevant times, was the interim

City Clerk for the City, located in Oakland County, Michigan, and was appointed

by the Pontiac City Council as City Clerk on May 31, 2022..

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over defendants pursuant to MCL

600.605 and 42 U.S.C. §1983.

7.      Venue is proper in this Court pursuant to MCL 600.605 and

600.1621 as the property at issue is located in Oakland County, Michigan.

8.      The amount in controversy is in excess of $25,000.00.

## FACTUAL ALLEGATIONS

9.      On March 29, 2019, Rubicon entered into a purchase agreement

for 7 and 9 Glenwood Avenue, Pontiac, Michigan 48326, which had parcel

- 2 -

numbers: 64-14-21-383-004, 64-14-21-383-005, 64-14-21-383-006, 64-14-21-383-007, 64-14-21-383-011, 64-14-21-383-012 and 64-14-28-126-047 ("Subject Property") (a copy of the purchase agreement is attached hereto as Exhibit 1).

10.     Under the terms of the purchase agreement, Rubicon was obligated to submit plans and applications for a marijuana license as soon as practicable (Exhibit 1).

11.     Upon executing the purchase agreement for the Subject Property, Rubicon applied to the City for a Zoning Map Amendment.

12.     Pursuant to Section 6.802 of the City Zoning Ordinance, Rubicon's application was processed through the City's technical review.

13.     On December 18, 2019, the City Planning Commission held a public hearing and voted to recommend that City Council approve the Zoning Map Amendment for the Subject Property approving the change from the current C-1 Local Business zoning to C-3 Corridor Commercial and M-1 Light Manufacturing with CR Conditional Rezoning.

14.     In accordance with the City's ordinances, the recommendation of the City's Planning Commission was placed on the agenda of the City Council for its January 21, 2020 meeting, and on January 21, 2020, the City Council at its meeting approved Resolution 20-29, which adopted the Zoning Map Amendment recommended by the City Planning Commission as to the Subject Property (a copy of approved Resolution 20-29 is attached hereto as Exhibit 2).

15.     Resolution 20-29 amended the zoning of the Subject Property from C-1 Local Business to C-3 Corridor Commercial and M-1 Light Manufacturing

- 3 -

with CR Conditional Zoning and allowed medical marihuana facilities to be located within the M-1 Light Manufacturing zoned area of the Subject Property.

16. Resolution 20-29 contained a condition that limited the size of the medical marijuana non-provisioning facilities that were in place until a grocery tenant of at least 15,000 square feet was operating on the Subject Property.

17. Pursuant to MCL 125.3405(1), an owner of land may voluntarily offer in writing, and the local unit of government may approve, certain use and development of the land as a condition to a rezoning of the land or an amendment to a zoning map.

18. On January 21, 2020, pursuant to MCL 125.3405(1), Rubicon and the City prepared a Conditional Rezoning Agreement which provided for a mixed-use development and allowed cannabis cultivation, manufacturing and processing facilities (a copy of the Conditional Rezoning Agreement is attached hereto as Exhibit 3).

19. The Conditional Rezoning Agreement provided that Rubicon was to construct a retail strip center and grocery store to service the needs of the community and tenants of the Subject Property (the "Project"), which would commence after site plan approval was completed and approved by the Planning Commission.

20. The Conditional Rezoning Agreement recognized the Zoning Map Amendment of Resolution 20-29 and provided that the uses of the Subject Property would be those in compliance with the C-3 Corridor Commercial and M-

1 Light Manufacturing zoning, including allowing cannabis growing and processing facilities.

21.     On January 23, 2020, Vern Gustafsson, the City Planning Manager, sent correspondence to Rubicon stating that the Pontiac City Council had approved the rezoning request at the January 21, 2020 meeting and that the City Attorney will obtain the City signatures on the Conditional Rezoning Agreement (a copy of this correspondence is attached hereto as Exhibit 4).

22.     The January 23, 2020 correspondence from Planning Manager Gustafsson stated that approved medical marihuana permits were required for each medical marihuana facility from the City (Exhibit 4).

23.     Nothing in Resolution 20-29 or the correspondence from City Planning Manager Gustafsson stated that the City was required to amend the City Zoning Ordinance to accommodate the change set forth in Resolution 20-29.

24.     As soon as Resolution 20-29 was adopted, Rubicon moved to close on the purchase of the Subject Property, which occurred on February 27, 2020.

25.     Rubicon would not have purchased the Subject Property if the City had not adopted Resolution 20-29.

26.  .  Once its purchase of the Subject Property was completed, Rubicon entered into agreements to finance the development of the parcels and leases with tenants for portions of the Subject Property.

27.     The development of the parcels was to include, among other allowed zoning uses, the growing and processing of medical marijuana, and a lease with Hollywood Market for a grocery store.

- 5 -

28.     Upon approval of and in reliance on Resolution 20-29, Rubicon entered into leases with the planned anchor tenants of the Subject Property, Family Rootz, LLC ("Family Rootz"), Pharmaco, Inc. ("Pharmaco") and Hollywood Market.

29.     Family Rootz and Pharmaco specifically entered into these leases for the purpose of establishing and conducting the allowed zoning uses of growing and processing medical marijuana.

30.     Prior to entering into the lease with Rubicon, Family Rootz became pre-qualified to provide cultivation and processing of medical marijuana under the State of Michigan rules and regulations applicable to appropriate licensure to conduct these legitimate cultivation and extraction businesses.

31.     In July of 2020, Family Rootz submitted its three applications with the required application fees (totaling $15,000.00) tor City permits to operate various licensed cultivation and processing businesses within the City.

32.     Based on representations made to representatives of Rubicon and Family Rootz by City representatives, Family Rootz and Rubicon believed that the City would quickly and timely review and process these three applications.

33.     Yet, despite the adoption of Resolution 20-29, interim City Clerk Doyle refused to issue the permits to Family Rootz, without any legitimate basis or justification.

34.     Interim City Clerk Doyle also refused to issue permits to operate various licensed cultivation and processing businesses within the City.to Pharmaco without any legitimate basis or justification.

- 6 -

35.    In the six month period from July, 2020 through January, 2021, Rubicon signed leases with seven additional tenants for portions of the Subject Property, all of whom intended to use the Subject Property for the allowed medical marihuana uses set forth in Resolution 20-29.

36.    After six months of refusing to issue permits, Interim City Clerk Doyle finally stated that he was taking this action because he believed that Medical Marihuana Grower and Medical Marihuana processor uses were not permitted outside the Cesare Chavez and Walton Blvd Medical Marihuana Overlay Districts.

37.    City Ordinance 2361 Section 3.1106 states, "Medical marihuana (marijuana) uses outside the Medical Marihuana Overlay Districts are subject to Planning Commission approval following the standards for approval of Section 6.303 for special exception permits, and Article 2, Chapter 5, Development Standards for Specific Uses."

38.    Medical Marihuana uses are defined in City Ordinance 2361 Section 3.1102 and list: "Provisioning center; Safety compliance facility, Secure transporter, Grower, and Processor."

39.    Based on Resolution 20-29 and the City's ordinances, there was no legitimate basis or justification for interim City Clerk Doyle's refusal to issue the requested permits.

40.    Interim City Clerk Doyle also advised Rubicon's other tenants that he would not issue permits to them for any medical marihuana uses, despite the language of Resolution 20-29 and the City's ordinances.

- 7 -

41.    Interim City Clerk Doyle's refusal to issue the requested permits contradicted the position of the City Planning Department, the language of Resolution 20-29 and the position taken by the City Attorney.

42.    Rubicon learned that defendants have accepted applications and application fees and have processed the applications of other businesses for medical marihuana business activities outside of the Overlay Districts.

43.    All of these other entities are similarly-situated to Rubicon, and were treated substantially differently by defendants and were not subjected to the same adverse action as was Rubicon.

44.    On March 4, 2021, interim City Clerk Doyle sent correspondence to Family Rootz, indicating that its applications would be put on hold indefinitely because the City was delaying in paying the fees of its outside consultants.

45.    Family Rootz' applications fees include monies for the payment of outside consultants, but the City would not tender the payment to its outside consultants.

46.    Interim City Clerk Doyle did not send similar correspondence to other applicants for medical marihuana permits who were not tenants of the Subject Property.

47.    Because of defendants' activities and refusal to process applications for permits for medical marihuana activities on the Subject Property, Rubicon's tenants, including Pharmaco, cancelled their leases for portions of the Subject Property.

48.     Based on the statements and actions of interim City Clerk Doyle, Hollywood Market terminated any lease relationship with Rubicon.

49.     The Pharmaco lease was a 15-year lease, under which Rubicon would be received $37,500,000.00 in rent.

50.     The Family Rootz lease would have generated between $9,000,000 and $12,000,000 in rent annually for at least three years.

51.     The Hollywood Market lease was a 10-year lease, with annual revenues totaling $1,500,000.00.

52.     Because of defendants' actions and statements, Rubicon's lender refused to disburse any of the $45,000,000 in loan funds for development of the Subject Property, causing Rubicon to suffer astronomical costs because of the delay in development.

53.     Because of defendants' actions, Rubicon was forced to file an action in this Circuit Court seeking declaratory relief.

54.     On May 21, 2021, this Circuit Court entered an Order Granting Plaintiff's Motion for Declaratory Relief (Exhibit 5).

55.     But by the time the Order Granting Plaintiff's Motion for Declaratory Relief was entered, Rubicon's tenants had already decided not to proceed with leasing portions of the Subject Property and Rubicon's lender refused to release the loan proceeds so that Rubicon could develop the Subject Property.

56.     After Rubicon filed its lawsuit and obtained the Order Granting Plaintiff's Motion for Declaratory Relief, one of Rubicon's principals, Joseph

Brown, and his company, Browne Design Consultants, LLC, was retained to provide design and other services for SK Properties for a project in the City.

57.     During a meeting with City representatives, including the Mayor, representatives of SK Properties were told that if they wanted their project in the City to be approved, they needed to get rid of Brown and his company.

58.     The statements made by City representatives to representatives of SK Properties were made because of the lawsuit previously filed in this Circuit Court.

59.     Because of the statements by the City representatives, SK Properties terminated its relationship with Brown and Browne Design Consultants, LLC.

60.     Brown and Browne Design Consultants, LLC would have earned $9,275,000.00 from SK Properties contract.

61.     Because of defendants' actions, plaintiffs have been significantly damaged, including but not limited to the loss of income from the leases, the loss of the increased asset valuation on the Subject Property from having the leases in place, the increased development costs, the loss of the income from the contract with SK Properties, the loss of goodwill and reputation, payment of legal fees in excess of $75,000 for the prior Oakland County Circuit Court action to obtain the declaratory judgment, and other damages.

62.     Defendants' actions in blocking and preventing Rubicon from developing the Project are unwarranted and wrongful and part of a municipal policy to wrongfully harass Rubicon.

63.     Defendants have no legitimate basis for their actions against plaintiffs..

64.     Rubicon has a very valuable property right in the Subject Property and Rubicon's right to develop the Subject Property is a fundamental liberty interest, of which it cannot be deprived without procedural and substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

65.     Defendants, by their actions, have deprived Rubicon of its property rights and liberty interests in the Subject Property.

66.     Defendants' unwarranted actions against plaintiffs are arbitrary and capricious.

67.     Defendants' actions have deprived plaintiffs of their rights to procedural and substantive due process, as guaranteed under the Fourteenth Amendment of the United States Constitution.

68.     By treating Rubicon differently than similarly-situated property owners and developers to Rubicon's detriment, defendants have violated Rubicon's right to equal protection of the law, as guaranteed under the Fourteenth Amendment of the United States Constitution.

69.     Defendants' actions toward plaintiffs are harassing and have made it unfeasible for successful development of the Subject Property.

70.     Defendants' actions have caused plaintiffs to suffer injury and economic loss, and to incur other compensable damages.

71.     Defendants' actions have had a negative impact on plaintiffs' goodwill and reputation.

72.     Defendants' actions in having SK Properties terminate its relationship with plaintiffs is a retaliatory action in violation of plaintiffs' constitutional rights, as guaranteed under the First Amendment of the United States Constitution.

73.     By depriving plaintiffs of their right to petition the government, defendants have violated plaintiffs' constitutional rights, as guaranteed under the First Amendment of the United States Constitution.

74.     Because of the nature of the injuries which defendants have inflicted and will continue to inflict on plaintiffs, plaintiffs may not have a complete remedy at law and therefore seek injunctive relief from this Honorable Court.

75.     The incidents set forth in the preceding paragraphs are just a few examples of the unlawful harassment directed by defendants against plaintiffs.

76.     The policies and actions of defendants were and are based on considerations other than those proper to the good-faith administration of justice and lay far outside the scope of legitimate action.

77.     Defendants' policy to unlawfully harass plaintiffs and engage in unlawful activity denying plaintiffs their fundamental rights has caused plaintiffs injury in their business and property.

78.     Defendants have knowingly and intentionally caused plaintiffs to be unable to recoup anything from the large amount of money and time plaintiffs have invested in the Subject Property or obtain the profits which they would have

- 12 -

received during the pendency of the leases with Rubicon's tenants or obtain the profits which plaintiffs would have earned from the relationship with SK Properties.

79.    Defendants' harassing activities are municipal actions and are inherently arbitrary and a deliberate misuse of governmental power.

## COUNT I

### Deprivation of Rights to Equal Protection of the Law
### Brought Pursuant To 42 U.S.C. §1983

80.    The allegations set forth in paragraphs 1 through 79 are incorporated herein by reference.

81.    Defendants, through their actions, have deprived and continues to deprive plaintiffs of federally protected rights, privileges and immunities provided by federal law and the United States Constitution, and plaintiffs are thereby entitled to damages for defendants' deprivation of plaintiffs' constitutional rights to equal protection of the laws, for which plaintiffs can bring a claim through the mechanism of 42 U.S.C. §1983.

82.    Defendants' actions in selectively targeting plaintiffs and the Subject Property, as set forth in the preceding paragraphs, for enforcement of alleged internal procedures deprived plaintiffs of its constitutionally-protected right to equal protection of the law under the Fourteenth Amendment of the United States Constitution.

83.    Plaintiffs were selectively treated in adverse ways by defendants, as set forth in the preceding paragraphs.

- 13 -

84. Plaintiffs were treated adversely and differently than other property owners, who were similarly situated to plaintiffs, and plaintiffs constitute a class of one.

85. The policies and actions of defendants were based on considerations other than those proper to the good-faith administration of justice and lay far outside the scope of legitimate action.

86. As a direct and proximate result of defendants' actions, plaintiffs have suffered and continue to suffer injury, including irreparable harm.

87. Because of the nature of defendants' actions, which had the effect of destroying the business opportunities of plaintiffs, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

88. Because of defendants' deprivation of plaintiffs' rights to equal protection of the law, and because their actions show reckless disregard and callous indifference for plaintiffs' federally protected rights, plaintiffs are entitled to all compensatory and other damages incurred, including costs and attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below and enter a judgment in their favor and against defendants for their damages, plus costs, interest and attorney fees.

## COUNT II

### Deprivation of Due Process Rights
### Brought Pursuant To 42 U.S.C. §1983

89.     The allegations set forth in paragraphs 1 through 88 are incorporated herein by reference.

90.     Defendants, through their actions, have deprived and continue to deprive plaintiffs of federally protected rights, privileges and immunities provided by federal law and the United States Constitution, including plaintiffs' property rights and liberty interests, and plaintiffs are thereby entitled to damages for defendants' deprivation of plaintiffs' constitutional rights to due process, for which plaintiffs can bring a claim through the mechanism of 42 U.S.C. §1983.

91.     The policies and actions of defendants were and are based on considerations other than those proper to the good-faith administration of justice and lay far outside the scope of legitimate action.

92.     Defendants' actions constituted a deliberate deprivation and denial, under color of law, of plaintiffs' federal rights as guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, for which plaintiffs are entitled to bring a claim through the mechanism of 42 U.S.C. §1983.

93.     Defendants' actions in depriving plaintiffs of their due process rights were based wrongfully on plaintiffs as a class of one.

94.     As a direct and proximate result of defendants' actions, plaintiffs have suffered and continue to suffer injury, including irreparable harm.

- 15 -

95.     Because of the nature of defendants' actions, which had the effect of destroying the business opportunities of plaintiffs, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

96.     Because defendants acted with an improper motive and intent, in an arbitrary and discriminatory manner, and their actions show reckless disregard and callous indifference for plaintiffs' federally protected rights, plaintiffs are entitled to all compensatory and other damages incurred, including costs and attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter an order granting the relief requested in the Request for Relief below and enter a judgment in its favor and against defendants for its damages, plus costs, interest and attorney fees.

## COUNT III

### Deprivation of Rights under the First Amendment
### Brought Pursuant To 42 U.S.C. §1983

97.     The allegations set forth in paragraphs 1 through 96 are incorporated herein by reference.

98.     Defendants, through their actions, have deprived and continue to deprive plaintiff of federally protected rights, privileges and immunities provided by federal law and the United States Constitution, and plaintiff is thereby entitled to damages for defendants' deprivation of plaintiff's constitutional rights under the First Amendment to the United States Constitution, for which plaintiff can bring a claim through the mechanism of 42 U.S.C. §1983.

- 16 -

99. The United States Supreme Court has held that the First Amendment protects against retaliation for speech on matters of public concern and affords citizens the right to petition their government for redress.

100. The United States Supreme Court has held that a government may not deny a benefit to a person on the basis that infringes on constitutionally protected interests, including the right to criticize the government on matters of public concern.

101. Plaintiffs had the right to petition the government by filing suit against defendants.

102. The retaliatory actions of defendants against plaintiffs based on plaintiffs' exercise of their rights under the First Amendment to the United States Constitution deprived plaintiffs of their constitutionally-protected rights under the First Amendment to the United States Constitution.

103. The policies and actions of defendants were based on considerations other than those proper to the good-faith administration of justice and lay far outside the scope of legitimate action.

104. As a direct and proximate result of the actions of defendants, plaintiffs have suffered and continue to suffer injury, including irreparable harm.

105. Because of the nature of the actions of defendants, which had the effect of destroying the business opportunities of plaintiffs, plaintiffs do not have a complete and adequate remedy at law, and injunctive relief is required.

106. Because of the retaliatory actions by defendants against plaintiffs for exercise of its rights under the First Amendment to the United States

- 17 -

Constitution, and because their actions show reckless disregard and callous indifference for plaintiffs' federally protected rights, plaintiffs are entitled to all compensatory and other damages incurred, including costs and attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter an order granting the relief requested in the Request for Relief below and enter a judgment in its favor and against defendants for its damages, plus costs, interest and attorney fees.

## COUNT IV

### Taking without Just Compensation

107.    The allegations set forth in paragraphs 1 through 96 are incorporated herein by reference.

108.    The Fifth Amendment—incorporated against the states by the Fourteenth Amendment—commands that the government may not take property for public use without providing just compensation.

109.    Under 42 U.S.C. § 1983, plaintiffs may recover damages for violation of their rights under the Fifth Amendment for actions taken under color of state law.

110.    Rubicon has a valid property interest in the Subject Property by virtue of its ownership of the Subject Property.

111.    Defendants deprived Rubicon of its property interest by their actions in refusing to allow Rubicon to develop the Subject Property.

- 18 -

112. There is a substantial causal connection between defendants' actions and the deprivation of Rubicon's property interests because defendants have purported to use state action to deprive Rubicon of its interests in the Subject Property.

113. Defendants have not provided just compensation for the taking of the Subject Property.

114. Defendants abused their legitimate powers through the process by which the Subject Property was taken.

115. Defendants' abuse of power occurred through actions directly aimed at Rubicon's property.

116. Defendants' actions were taken under color of state law.

117. The policies and actions of defendants were based on considerations other than those proper to the good-faith administration of justice and lay far outside the scope of legitimate action.

118. As a direct and proximate result of defendants' actions, Rubicon has suffered and will continue to suffer injury.

119. Because of defendants' deprivation of Rubicon's rights in the Subject Property without just compensation, Rubicon is entitled to all compensatory and other damages incurred, including costs and attorney fees pursuant to 42 U.S.C. §1988.

WHEREFORE, plaintiffs respectfully request that this Honorable Court enter an order granting the relief requested in the Request for Relief below and

enter a judgment in their favor and against the Township for their damages, plus costs, interest and attorney fees.

## **REQUEST FOR RELIEF**

Plaintiffs Rubicon Real Estate Holdings, LLC, Browne Design Consultants, LLC and Joseph Brown respectfully request that this Honorable Court enter a judgment for actual, compensatory, incidental and consequential damages on all of plaintiffs' claims in an amount to be determined by a jury and entered by this Honorable Court, plus costs, interest, exemplary damages, and attorney fees, and that this Honorable Court also enter an order that:

A.     Preliminary and permanently enjoins defendants and their agents, successors, representatives, assigners or any or person or entity acting for or on their behalf, from violating plaintiffs' rights to procedural and substantive due process and from denying plaintiffs equal protection of the laws and their rights and from retaliation against plaintiffs, protected under the First, Fifth and Fourteenth Amendment of the United States Constitution;

B.     Preliminary and permanently enjoins defendants and their agents, successors, representatives, assigns or any other person or entity acting for or on their behalf, from conspiring to violate plaintiffs' constitutionally-protected rights;

C.     Awards plaintiffs, pursuant to 42 U.S.C. §1988, their costs, attorney fees, interest, lost profits, legal fees for having to obtain a declaratory judgment, and all other damages as against defendants, including punitive damages against defendant Doyle;

- 20 -

D.      Awards plaintiffs their attorney fees for having to bring this action;

E.      Awards plaintiffs both pre-judgment and post judgment interest on each and every damage award; and

F.      Awards any other and further relief to plaintiffs as this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
Kus Ryan PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan  48326
(248) 364-3090

Dated:  January 23, 2023              Attorneys for Plaintiffs

## DEMAND FOR JURY

Plaintiffs Rubicon Real Estate Holdings, LLC, Browne Design Consultants, LLC and Joseph Brown, by and through their counsel, hereby demand a trial by jury on their causes of actions against defendants the City of Pontiac, Michigan and Garland Doyle, jointly and severally.

Respectfully submitted,


/s/ Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
Kus Ryan PLLC
2851 High Meadow Circle, Suite 120
Auburn Hills, Michigan  48326
(248) 364-3090

Dated:  January 23, 2023                    Attorneys for Plaintiffs

# EXHIBIT 1

## AGREEMENT FOR PURCHASE AND
## SALE OF COMMERCIAL REAL ESTATE

THIS AGREEMENT FOR PURCHASE AND SALE OF COMMERCIAL REAL ESTATE (the "Agreement") is made and entered into this 27th day of March, 2019 ("Effective Date"), by and between The Point Investment, LLC ("Seller") and Rubicon Real Estate Holdings, LLC ("Purchaser").

WHEREAS, Seller is the owner of certain real property located in the City of Pontiac, Oakland County, Michigan, commonly known as 1-97 South Glenwood, Pontiac, Michigan 48342 and legally describe on Exhibit A attached hereto and incorporated herein by this reference (the "Property").

WHEREAS, Seller desires to sell, and Purchaser desires to purchase, the real property and improvements located thereon as hereinafter more particularly described, upon the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and undertakings set forth below and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, including payment of the purchase price in consideration for conveyance of the premises as described below, the parties hereby agree as follows:

1. Sale and Purchase of Premises

Seller hereby agrees to sell and convey to Purchaser, and Purchaser hereby agrees to purchase and take from Seller, that certain parcel of real estate located in Oakland County, Michigan, commonly known as 1-97 South Glenwood, Pontiac, Michigan 48342, together with all improvements and fixtures located thereon, together with all easements, appurtenances, passages, mineral and water rights and other rights, liberties, and privileges in any way appertaining to any of the foregoing, including all rights of Seller, if any, to any land lying in the bed of any street or other public way adjacent to the property, and in and to any strips, gaps, or gores adjoining the property on all sides thereof (all of the foregoing, including the property, being collectively referred to herein as the "Premises" or "Property").

2. Purchase Price and Payment Thereof

The purchase price ("Purchase Price") for all of Seller's right, title and interest in and to the Premises shall be $5,000,000.00. The Purchase Price will be payable by Purchaser to Seller, subject to a credit in the amount of the Initial Deposit pursuant to Section 4 and other adjustments pursuant to Section 5 as provided herein, shall be paid by Purchaser to Seller on the Closing Date by wired federal funds immediately available to Seller's designated bank from the Escrow Agent, as provided for at Closing.

3. Closing

Subject to the satisfaction of all terms and conditions of this Agreement, the Closing of the sale and purchase of the Premises shall occur on or before June 20, 2019 (the "Closing") unless such closing is extended pursuant to Section 5. Closing shall take place at Title Connect, LLC, attention Jeff Gunsberg (the " Escrow Agent"), 28470 W. 13 Mile Road, Suite 325, Farmington Hills, MI 48334 At and as of Closing, subject to the contemporaneous performance by Purchaser of its obligations set forth below, Seller shall:

A. Convey the property to Purchaser by deed of general warranty in a form acceptable to Purchaser, free and clear of all liens and encumbrances except (i) those which are acceptable to Purchaser

and as any title company will insure and (ii) governmental laws and regulations (including zoning regulations) affecting the property.

B. Deliver possession of the Premises at and as of the time of recording the deed.

C. At and as of the Closing, subject to the contemporaneous performance by Seller of its obligations set forth above, Purchaser shall deliver to Escrow Agent the purchase price, in the manner set forth in Section 2.

4. Initial Deposit

As evidence of good faith, within 3 business days of Seller signing this Agreement, Purchaser will deliver the sum of $100,000 by Wire Transfer to the escrow agent (the "Initial Deposit"):

A. The Initial Deposit shall be applied to the Purchase Price at the time of Closing;  and

B. The Initial Deposit is non-refundable.

5. Options to Extend

In the event that Closing does not occur on or before June 27, 2019, Purchaser shall have the option to extend this Agreement as set forth below by paying Seller an additional non-refundable payment(s) (the "Option Payments"):

| Option no. | Payment Date | New Closing Date | Additional Option Payment |
|---|---|---|---|
| Option 1 | June 27, 2019 | July 27, 2019 | $25,000.00 |
| Option 2 | July 27, 2019 | August 27, 2019 | $25,000.00 |
| Option 3 | August 27, 2019 | September 27, 2019 | $25,000.00 |
| Option 4 | September 27, 2019 | October 27, 2019 | $25,000.00 |
| Option 5 | October 27, 2017 | November 27, 2019 | $50,000.00 |
| Option 6 | November 27, 2019 | December 27, 2019 | $50,000.00 |
| Option 7 | December 27, 2019 | January 27, 2020 | $100,000.00 |
| Option 8 | January 27, 2020 | February 27, 2020 | $100,000.00 |

Each Option Payment by Purchaser shall be applied to the Purchase Price at Closing. In order to exercise an option, Purchaser must notify the Seller in writing Five (5) days prior to the expiration of the applicable extension.  Purchaser shall be required to transfer by wire the additional option payment on the applicable payment date. The failure to transfer the monies on the applicable payment date will result in a late fee payment of $5,000 on each incident.  The additional Option Payments, once exercised, are non-refundable.

6. Apportionments; Responsibility for Other Expenses

A.  Real Estate Taxes and Assessments

All taxes and assessments (including special assessments) affecting the Property for any time period prior to the date of closing shall be paid by Seller, notwithstanding the fact that such taxes or assessments have become a lien upon or assessed against the Property as a result of any law. Current Taxes (as hereinafter defined), if any, shall be prorated and adjusted as of the date of Closing in accordance with the due date basis of the municipality or taxing unit in which the Property is located, with Seller being responsible for all such taxes up to Closing. All special assessments levied against the Property and providing for installment payments due after the date of closing shall be prorated and adjusted at Closing. Current Taxes shall mean the winter and summer tax bills issued for the property within twelve (12) months immediately preceding the date of closing.

### B.   Transfer Tax and Recording Fees

Seller shall pay the transfer tax imposed on the transfer of the Premises to Purchaser. Purchaser shall pay all recording fees imposed for recording the deed.

### C. Title Insurance

Seller shall deliver to the Purchaser as soon as may be, a complete commitment for a policy of title insurance, without standard exceptions, issued by Title Connect, for an amount not less than the purchase price hereunder, guaranteeing title in the condition required herein, bearing date later than the acceptance hereof, will be accepted as sufficient showing of title. If the commitment discloses any matters, which are not acceptable to the Purchaser (the "Title Defects"), Purchaser shall notify Seller in writing of such Title Defects within ten (10) days of Purchaser's receipt of the Commitment, and Seller shall have thirty (30) days from the date of Seller's receipt of Purchaser's notice of the Title Defects to have such Title Defects deleted from the Commitment if Seller so elects. If Purchaser fails to notify Seller with such ten day period then Seller accepts the commitment as was provided.

### D. Legal and Other Fees and Expenses

Each party shall bear its own legal fees and other expenses associated with this transaction.

### 7.   Brokerage Fees and Commissions

Each of Seller and Purchaser represents and warrants to the other that it has not engaged or dealt with any real estate agent or real estate broker with respect to the transactions contemplated by this Agreement. If any such real estate agent or real estate broker were to assert a claim for a commission based on an agreement with one of the parties then that party shall indemnify the other party against such a claim.

### 8.   Representations and Warranties by Seller

Seller hereby makes the following representations and warranties to Purchaser as of the Effective Date, and as of the Closing Date:

A.   Seller is a Michigan limited liability company and has full power to enter into this agreement and to consummate the transactions provided for herein.

B.   Seller is not a "foreign person," as defined by Section 1445 of the Internal Revenue Code. Seller shall comply with all requirements imposed by the Internal Revenue Service in regard to same.

C.  This agreement does not conflict with any contract, agreement or commitment to which Seller is a party.

D.  No further action of the members of Seller is required to give effect to this agreement or to permit Seller to carry out the transactions contemplated hereby.

E.  This agreement constitutes the legally valid and binding obligation of Seller, enforceable in accordance with its terms.

F.  Neither the entering into of this agreement nor the consummation of the transactions contemplated hereby will constitute a violation or breach by Seller of any contract, instrument, or other agreement to which it is a party or to which it is subject, or any judgment, order, writ, injunction, or decree issued against or imposed upon it, or will result in any violation of applicable law, order, rule, or regulation of any governmental authority.

G.  Seller owns marketable fee simple title to the Property.  No other person or entity has any right, claim or interest in the Property or any portion thereof, arising out of adverse possession, prescriptive rights, or otherwise. Seller will deliver at Closing the Premise free and clear of any tenants or leases unless Purchaser gives written notice 45 days prior to Closing of which tenants or leases that it will assume.  Copies of any current leases for the Property have been provided to Purchaser as of the Effective Date.

H.  Seller has not received any notice of nor does Seller have knowledge of any (a) violation of any law, statute, ordinance, order, regulation, rule, restriction or requirement of any governmental entity pertaining to or affecting any portion of the Property, (b) suit or proceeding pending or threatened affecting Seller or any portion of the Property, or (c) pending applications or commitments to any governmental or quasi-governmental entity or utility which would affect the Property which have not been disclosed in writing to Buyer.

I.  Seller has not received any notice from any governmental unit or agency indicating that the premises or any portion thereof, or any operation conducted therein, is in violation of any statute, code, ordinance, or regulation, and, to the best knowledge of Seller, no such violation exists.

J.  Seller has never caused or permitted any "hazardous material" (as hereinafter defined) to be placed, held, located, or disposed of on, under, or at the premises or any part thereof, and, to Seller's knowledge, neither the premises nor any part thereof has ever been used as a dump or storage site (whether permanent or temporary) for any hazardous material. As used herein, "hazardous material" means and includes any hazardous, toxic, or dangerous waste, substance, or material, defined as such in, or for purposes of, the Comprehensive Environmental Response, Compensation and Liability Act (42 USC 9601 et seq., as amended) or any other "superfund" or "superlien" law, or any other federal, state, or local statute, law, ordinance, code, rule, regulation, order, or decree regulating, relating to, or imposing liability or standards of conduct concerning any substance or material, as presently in effect. The Property does not contain any underground fuel storage tanks. All info given on hazardous materials is to the best of seller's knowledge.

K.  There is no action, suit, litigation, or proceeding of any nature pending, or, to the best knowledge of Seller, threatened, against or affecting the property, or any portion thereof, or which could result in the obtaining of a lien or other interest in the property by any third party, in any court or before or by any federal, state, county, or municipal department, commission, board, bureau, agency, or other governmental instrumentality.

L.   There are no unpaid claims of contractors, materialmen, or laborers which could give rise to a lien against the property. To Seller's knowledge, no work has been performed or is in progress upon, and no materials have been furnished to, the Property or any part thereof, which might give rise to any mechanic's, materialmen's, or other liens against the Property

M.   Seller owns the property free and clear of any and all liens, encumbrances, stipulations, and restrictions and shall deliver to Purchaser, at the closing, a general warranty deed with respect to the property, free and clear of any and all liens, encumbrances, restrictions, and stipulations except those acceptable to Purchaser.

There are no management, employment, service, equipment, supply, maintenance, water,

sewer, or other utility or concession agreement or agreement with municipalities or other

parties (including improvement or development escrows or bonds) with respect to or

affecting the Property which will burden the Property or Purchaser after Closing.

9. Representations, Warranties, and Acknowledgment by Purchaser.

Purchaser makes the following representations and warranties to Seller:

A.   Upon formation, Purchaser will be a limited liability company, duly organized, validly existing, and in good standing under the laws of the State of Michigan, having full power and authority to enter into and perform this agreement.

B.   The execution, delivery, and performance of this agreement have been duly authorized by all necessary corporate action on the part of Purchaser, and no further action of the members of Purchaser is required to give effect to this agreement or to permit Purchaser to carry out the transactions contemplated hereby.

C.   This agreement constitutes the legally valid and binding obligation of Purchaser, enforceable in accordance with its terms.

D.   Neither the entering into of this agreement nor the consummation of the transactions contemplated hereby will constitute a violation or breach by Purchaser of any contract, instrument, or other agreement to which it is a party or to which it is subject, or any judgment, order, writ, injunction, or decree issued against or imposed upon it, or will result in any violation of applicable law, order, rule, or regulation of any governmental authority.

E.   Neither Purchaser nor any of its affiliates, nor any of their respective partners, members, shareholders or other equity owners, and none of their respective employees, officers, directors, representatives or agents, is a person or entity with who U.S. persons or entities are restricted from doing business under regulations of OFAC (including those named on the List) or under any statute, executive order (including the Order), or other governmental action.

10. Plans and Applications.   Purchaser will undertake in good faith to take all such steps necessary to submit all required plans and applications to the City of Pontiac necessary for a marijuana license as soon as reasonably practicable.   Purchaser's legal counsel will certify in writing to Seller that such plans have been submitted within five business days of submission and provide copies of the documents to the Seller with all personal and confidential information being redacted.

11. Closing Contingencies

The obligations of the parties to close the transactions contemplated hereby shall be subject to the following contingencies:

A. Contingencies to Seller's Obligation to Close

The Seller shall be under no obligation to close this transaction unless the following conditions shall have been satisfied, or waived by Seller, in writing, at or prior to the time of closing:

[1] Purchaser shall have tendered the Purchase Price in immediately available funds.

[2] All of Purchaser's representations and warranties shall remain true and correct as of the date of closing.

[3] Purchaser shall have performed its other obligations under this agreement.

B. Contingencies to Purchaser's Obligation to Close

Purchaser shall be under no obligation to close this transaction unless the following conditions shall have been satisfied or waived by Purchaser, in writing, at or prior to the time of Closing:

[1]Seller shall have complied with its obligations under the terms of this agreement and shall have tendered a general warranty deed for the property, free and clear of all liens and encumbrances or adverse conditions to title except those acceptable to Purchaser.

[2]Purchaser shall have until Closing to conduct a physical inspection of the Premises.

[3]Purchaser shall have until Closing to conduct, or cause to be conducted, an environmental audit of the Premises.

[4]All of Seller's representations and warranties shall remain true and correct as of the date of Closing.

[5]There shall exist no condemnation or other proceedings, or other litigation or administrative proceedings of any nature with respect to the premises as of the date of Closing, nor shall any such proceedings be threatened.

[6]There shall be no parties in possession of any portion of the Property unless consented to in writing by the Purchaser.

[7]There shall not exist any materially adverse change in the state of title to the property or in the physical condition of the premises from the state of title and the physical condition that exist on the date of this agreement.

11. Damage

Until the time of recording of the deed, risk of loss with respect to the premises shall continue to be borne by Seller, in the event that any improvements located upon the Property shall be damaged or destroyed by fire, storm or other casualty before the Closing Date, the Seller Shall repair the damage or

discount the Purchase Price in an amount required to restore the Property. As of Closing, Purchaser shall have an insurable interest in the Property.

12. <u>Condemnation; Other Proceedings</u>

In the event of any condemnation or similar proceedings being instituted during the term of this agreement, Purchaser shall have the option:

A. To elect to close under this Agreement, to pay the Purchase Price for the Premises, and to receive the condemnation proceeds or

B. To elect to terminate this Agreement, recover the Initial Deposit and The Option Payments, and have no further obligation to Seller hereunder.

13. <u>Purchaser's Access to the Property Prior to Closing</u>. Purchaser may, prior to the Closing, through its employees, representatives, attorneys, accountants, or agents, make such further investigation, inspection, discovery and testing of the property which Purchaser deems necessary or desirable. Purchaser shall have the right to have one or more surveys of the Property completed and to make soil tests and other tests of the Property.

14. <u>Property Documents/ Inspection of Property.</u>

A. Within 5 business days following the Effective Date, Seller shall furnish to Purchaser all materials concerning the Property which Seller possesses, and to the extent that the materials exist, or which Seller may reasonably obtain, and Seller shall continue to furnish to Buyer within three (3) business days following Seller's receipt of same, all materials concerning the Property of which Seller acquires possession subsequent to the Effective Date, including, but not limited to, copies of all title insurance policies, plans, plats, surveys, zoning and land use information, contracts, soil tests and reports, environmental tests and reports, engineering studies, inspection reports, due diligence materials, CAD files, appraisals, feasibility studies, landscape plans, site plans and all other governmental and quasi-governmental applications, approvals, consents and authorizations relating to the Property. All of the information to be furnished under this Section shall collectively be referred to as the "Property Documents." At Closing, Seller shall assign to Purchaser all of its right, title and interest in and to the Property Documents and deliver, to the extent available, all of the original Property Documents, Seller's Permits and Intangible Personal Property.

B. Purchaser acknowledges and agrees that Purchaser is relying solely upon its Inspections and due diligence and that Purchaser is purchasing the Property on an "AS IS", "WHERE IS" and "WITH ALL FAULTS" basis, without representations, warranties or covenants, express or implied, of any kind or nature (except as otherwise provided herein). including, but not limited to, the zoning of the Property, the tax consequences to Purchaser, the physical condition of the Real Property, environmental compliance, governmental approvals and compliance of the Real Property with applicable rules, regulations, ordinances and statutes.

15. <u>Miscellaneous Provisions</u>

A. This agreement, together with any exhibits and schedules hereto, which are deemed to be incorporated by reference as if fully set forth at length herein, constitutes the entire written understanding of the parties and supersedes all oral and written understandings of the parties, all of which are deemed to be merged herein. This agreement may not be modified or amended except in writing, signed by each of the parties hereto, or their permitted successors or assigns.

B. This agreement shall be binding upon and shall inure to the benefit of all successors and permitted assigns of the parties hereto.

C. This agreement and the obligations of the parties hereunder shall be governed in all respects by the laws of the State of Michigan.

D. Time shall be of the essence in the performance by Seller and Purchaser of their respective obligations hereunder.

E. When either Purchaser or Seller desires or is required to give notice to the other in connection with and according to the terms of this agreement, such notices shall be addressed as follows:

| | |
|---|---|
| If to Seller: | The Point Investment, LLC |
| | Attn: Mike Yono |
| | P.O. Box 252451 |
| | West Bloomfield, MI 48323 |
| If to Purchaser: | Rubicon Real Estate Holdings, LLC |
| | 900 Wilshire Drive, Suite 300 |
| | Troy, Michigan 48084 |

Such notice shall be deemed to have been given when personally delivered or, if delivery is by certified or registered mail, postage paid, 24 hours after deposit thereof in the United States mails.

16. Further Documentation

The parties believe that they have identified all documentation necessary in order to consummate the transactions contemplated by this agreement. In the event, however, that other and further documents, consistent with the terms of this agreement, are necessary in order to consummate the transactions contemplated hereby, each of Seller and Purchaser commits to use its best efforts to provide such documentation as soon as practicable, with the intention that the transactions contemplated hereby shall be completed on or prior to the closing.

17. Default and Remedies

In the event of any material default hereunder, the parties shall have the following remedies:

A. In the event of a default by Seller, Purchaser shall have the right to terminate this agreement, or to obtain a decree of specific performance requiring conveyance of the Premises to Purchaser in accordance with the terms of this Agreement or to recover the Deposit and Option Payments. The non-defaulting party shall be entitled to recover all fees and costs, including attorney fees, incurred in enforcing this Agreement.

B. In the event that Seller transfers any right, title or interest in the Property prior to Closing, which transfer prevents Seller from conveying good and marketable title to Purchaser at closing, and Purchaser has provided sufficient evidence of its ability to close on the purchase of the property prior to the

expiration of the last extension option, including making all extension payments required to extend closing as otherwise provided in this Agreement, then the parties agree that Seller shall pay Purchaser liquidated damages in the amount of the Purchase Price and Purchaser shall be able to place lien on the Property in the amount of the Purchase Price in the event of such breach.

C. Notwithstanding anything contained herein to the contrary, in the event specific performance is not available as a remedy, then Purchaser may exercise all remedies available at law or in equity. All of Purchaser's rights and remedies hereunder shall be cumulative, and Purchaser's exercise of any right or remedy shall not preclude Purchaser's exercise of any other right or remedy.

D. Purchaser shall take no action with respect to a Seller's default, and Seller shall take no action with respect to Purchaser's default, until the non-defaulting party has given written notice to the defaulting party and the defaulting party has failed to cure the default within ten (10) days after receipt of such notice.

C. If Purchaser breaches this Agreement, and such breach is not cured in accordance with Section 17 (D), then after 5 days of prior written notice from Seller to Purchaser the Title Company shall deliver the Initial Deposit and any and all Option Payments to Seller as full compensation for its damages and this Agreement shall then terminate in its entirety and Purchaser shall have no further rights hereunder.

## 18. Effectiveness of Agreement

This agreement shall be effective as of the date first set forth above regardless of the date and time of execution by Seller and Purchaser.

## 19. Recording of Short Form Agreement

The parties agree that a short form or memorandum of this agreement, in recordable form, may be executed by each party, at the request of either party, and recorded in the office of the county clerk of Oakland County, Michigan, in order to provide constructive notice of this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of dates and times set forth below.

Seller:

Point Investment, LLC

Mike Yono, Managing Member          3-27-2019

PURCHASER:

Seller:

Rubicon Real Estate Holdings, LLC

Manuel Ferraiuolo, Member

MF Joseph Brown, Member

10

**EXHIBIT A**

**LEGAL DESCRIPTION**

# EXHIBIT 2

## Resolution of the Pontiac City Council



20-29    **Resolution to approve a Zoning Map Amendment request [ZMA 19-08] for 7 & 9 Glenwood Avenue also known as parcel numbers 64-14-21-383-011 & 012, to amend the current site zoning C-1 Local Business to C-3 Corridor Commercial and M-1 Light Manufacturing with CR Conditional Zoning.** Moved by Councilperson Pietila and second by Councilperson Taylor-Burks.

Whereas, the City has received an application for a Zoning Map Amendment for 7 & 9 Glenwood Avenue identified as parcel numbers 64-14-21-383-011 & 012 from Manuel David Ferraiuolo; and
Whereas, the Planning Division has reviewed the applicant's rezoning request and the requirements set forth by Section 6.804 of the Zoning Ordinance, and the Planning Division has determined the aforementioned request and proposed intended use of the property complies with the City of Pontiac Zoning Ordinance; and
Whereas, in accordance with the procedures outlined in the Zoning Ordinance, Sections 6.802 as it relates to Zoning Map Amendments, the request has undergone the required: technical Review, Public Hearing, and Planning Commission Recommendation; and
Whereas, On December 18, 2019, a Public Hearing was held and in consideration of public opinion, the Planning Commission recommends City Council to approve the Zoning Map Amendment request for 7 & 9 Glenwood Avenue approving the change from the current C-1 Local Business to C-3 Corridor Commercial and M-1 Light Manufacturing with CR Conditional Rezoning; and
Now, Therefore, Be It Resolved that the City of Pontiac City Council approve the Planning Commission recommendation for the Zoning Map Amendment (ZMA 19-08) request for 7 & 9 Glenwood Avenue also known as parcel numbers 64-14-21-383-011 & 012, to amend the current site zoning C-1 Local Business to C-3 Corridor Commercial and M-1 Light Manufacturing with CR Conditional Zoning and to allow medical marihuana facilities to locate within the M-1 Light Manufacturing zoned area of the site. Additionally, the CR Conditional Rezoning requires the applicant may only occupy up one hundred thousand square feet of space for medical marihuana non-provisioning facilities until such time that grocery tenant this is minimum of fifteen thousand square feet receives a certificate of occupancy and is open to the public for business.

Ayes: Miller, Pietila, Taylor-Burks, Waterman, G. Williams and K. Williams
No: Carter
**Resolution Passed.**

I, Garland S. Doyle, Interim City Clerk of the City of Pontiac, hereby certify that the above Resolution is a true and accurate copy of the Resolution passed by the City Council of the City of Pontiac on January 21, 2020.

GARLAND S. DOYLE, Interim City Clerk

January 29, 2020

# EXHIBIT 3

# EXHIBIT 4



**CITY OF PONTIAC**
Department of Building Safety & Planning
PLANNING DIVISION
47450 Woodward Ave | PONTIAC, MICHIGAN 48342
TELEPHONE: 248.758.2800

*Mayor Deirdre Waterman*

DATE:          January 23, 2020

ZMA 19-08     ZONING MAP AMENDMENT – REZONE PROPERTY FROM C-1 LOCAL BUSINESS ZONING
              DISTRICT TO C-3 CORRIDOR COMMERCIAL AND M-1 LIGHT MANUFACTURING ZONING
              DISTRICTS WITH CONDITIONS
              7 & 9 S. GLENWOOD AVENUE | PARCEL NO. 64-14-21-383-011 & 012

Dear Mr. Ferraiuolo:

The Pontiac City Council **approved** your request to rezone 7 & 9 S. Glenwood Avenue, also known as PIN
No. 64-14-21-383-011 and 64-14-21-383-012, from C-1 Local Business Zoning District to C-3 Corridor
Commercial and M-1 Light Manufacturing Zoning Districts with Conditions at their meeting on January
21, 2020.

Please be advised, the City Attorney will review the Conditional Rezoning Agreement for execution
between the Applicant and City Council and obtain City signatures. The Applicant is required to record
the Conditional Rezoning Agreement and transmit the recorded Agreement to the City of Pontiac.

As you know, the Applicant will be required to obtain an approved Medical Marihuana permit for each
Medical Marihuana Facility from the City and the state of Michigan. In addition, obtain a Special
Exception Permit for each Medical Marihuana Facility and complete Site Plan documents per section
6.204 of the Pontiac Zoning Ordinance for preliminary and final Site Plan Review approval for each phase
of development from the Planning Commission and apply for all City, County and state permits.

Should you have any further questions, feel free to contact me at 248.758.2816.

Respectfully submitted,

Vern Gustafsson
Planning Manager

cc:  Anthony Chubb, City Attorney
     Mike Wilson, Building Official

# EXHIBIT 5

FILED   Received for Filing   Oakland County Clerk   5/24/2021 8:56 AM

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**

| | |
|---|---|
| **RUBICON REAL ESTATE HOLDINGS, LLC,** and **FAMILY ROOTZ, LLC,** | Case No.: 2021-187117-AW |
| Plaintiffs, | Hon. Yasmine I. Poles |
| v. | |
| **THE CITY OF PONTIAC, a Michigan Municipal Corporation, and GARLAND DOYLE, Interim Pontiac City Clerk,** | |
| Defendants. | |

_____/

| | |
|---|---|
| **ALLEN BROTHERS, ATTORNEYS AND COUNSELORS, PLLC** | **ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C.** |
| By: John M. Nader (P41610) | By: Anne McClorey McLaughlin (P40455) |
| Harry Kalogerakos (P53544) | Attorneys for Defendant, City of Pontiac, only |
| Attorneys for Plaintiff Rubicon | 27555 Executive Dr., Suite 250 |
| 400 Monroe Street, Suite 620 | Farmington Hills, MI 48331-3550 |
| Detroit, MI 48226 | (248) 489-4100 /248-489-1726 (fax) |
| (313) 962-7777 | amclaughlin@rsjalaw.com |
| jnader@allenbrotherspllc.com | |
| kalo@allenbrotherspllc.com | |
| | |
| **NOVELLO & ASSOCIATES, PC** | |
| By: Matthew D. Novello (P63269) | |
| Attorneys for Plaintiff Family Rootz, LLC | |
| 3542 Lakeview | |
| Highland, MI 48356 | |
| (248) 885-0011 | |
| mnovello@novellolawfirm.com | |

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR DECLARATORY RELIEF**

At a session of said Court held in the

City of Pontiac, County of Oakland and State

of Michigan on  5/21/2021 _____, 2021.

PRESENT: HON.  YASMINE I. POLES _____

CIRCUIT COURT JUDGE

Page **1** of **3**

This matter having come on for hearing before the Court on May 19, 2021 of Plaintiffs' Motion for Declaratory Judgment/Relief, the parties having filed response and reply briefs, and appearing for oral argument, and the Court being fully advised of the premises;

**IT IS HEREBY ORDERED** that Plaintiffs' Motion For Declaratory Judgment/Relief is GRANTED, and the Court declares and adjudges the rights and responsibilities of the Parties as follows:

Pursuant to the Pontiac City Council's January 21, 2020 approval of a Zoning Map Amendment rezoning the subject Properties to C-3 and M-1 and approval of a Conditional Rezoning Agreement that has been fully executed by the Parties, effective January 21, 2020, permitting medical marijuana grower and processor facilities to operate at the subject properties, as well as a food market, Plaintiffs and any future property owners and lessees/occupants may develop the subject properties to include medical marijuana grower and processor facilities and a food market.

The City of Pontiac, including its elected officials, agents, employees, appointees, and interim appointees shall forthwith implement the terms of the executed Conditional Rezoning Agreement between the City of Pontiac and Rubicon Capital, LLC.

The City of Pontiac, including its elected officials, agents, employees, appointees, and interim appointees shall forthwith issue preliminary approval of all pending Pharmaco, Inc, and Family Rootz applications for grower and processor licenses and permits necessary for the continued processing of those applications in accordance with the provisions of the City of Pontiac Medical Marihuana Facilities Licensing Ordinance, Ord. 2357, Pontiac Code § 26-1499(b), and ultimately, for issuance of those licenses. For purposes of Ord. 2357(b)(2), Pontiac Code § 26-1499(b)(2), the Court declares and adjudges that the Property complies with the zoning ordinance

pursuant to the Zoning Map Amendment and Conditional Rezoning Agreement approved by the Pontiac City Council on January 21, 2020.

All Plaintiffs, and the City of Pontiac, including its elected officials,  agents, employees, appointees, and interim appointees are bound by the terms of this Order.

THIS IS NOT A FINAL ORDER AND DOES NOT CLOSE THE CASE.

/s/ YASMINE I. POLES

HON. YASMINE  I. POLES
CIRCUIT COURT JUDGE                    in

Approved as to form and entry:

/s/ John M. Nader (P41610)
/s/ Harry Kalogerakos (P53544)
Attorneys for Plaintiff Rubicon

/s/ Matthew D. Novello (P63269)
Attorney for Plaintiff Family Rootz, LLC

/s/ Anne McClorey McLaughlin (P40455)
Attorney for Defendant City of Pontiac