UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBICON REAL ESTATE HOLDINGS, LLC,
BROWNE DESIGN CONSULTANTS, LLC
and JOSEPH BROWN,

     Plaintiffs,

-vs-

CITY OF PONTIAC, MICHIGAN and
GARLAND S. DOYLE, jointly and
severally,

     Defendants.

Case No. 23-cv-10439
HON. DAVID M. LAWSON
Mag. Judge Curtis Ivy, Jr.

---

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, by and through their attorneys, ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C., move for summary judgment pursuant to Fed. R. Civ. P. 56, and request that the Court grant their motion for the reasons set forth in the attached brief. Lead defense counsel and Plaintiff's counsel schedule a phone conference for November 15, 2024 to discuss this motion and concurrence with the relief sought, however, Plaintiff's counsel had to cancel due to a hearing in another case. Counsel did discuss the matter through email correspondences on November 14, 2024 and November 15, 2024, but despite these reasonable efforts, Defense counsel was unable to obtain concurrence.

s/ Michael T. Berger (P77143)
ROSATI SCHULTZ JOPPICH & AMTSBUECHLER PC
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
mberger@rsjalaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUBICON REAL ESTATE HOLDINGS, LLC,
BROWNE DESIGN CONSULTANTS, LLC
and JOSEPH BROWN,

     Plaintiffs,                               Case No. 23-cv-10439
                                               HON. PAUL D. BORMAN

-vs-                                      Mag. Judge Curtis Ivy, Jr.

CITY OF PONTIAC, MICHIGAN and
GARLAND S. DOYLE, jointly and
severally,

     Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................... iii

MOST CONTROLLING AUTHORITY ........................................................ vi

ISSUES PRESENTED ...................................................................................... vii

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ................................................................................ 2

STANDARD OF REVIEW ............................................................................... 9

LAW & ARGUMENT – CLERK DOYLE ................................................... 10

    I.    Rubicon's procedural due process claim fails because it did not have a property interest in its potential tenants receiving marijuana licenses. ............................. 11

    II.    Rubicon's substantive due process fails because Rubicon was not deprived a protected property or liberty interest and Clerk Doyle did not act in a conscience shocking manner. ................................................................................ 15

    III.    The City did not take any of Rubicon's property. .................................................. 17

    IV.    The Equal Protection claim fails because Rubicon was treated the same as any other similarly situated entity. ............................................................................... 19

    V.    The Brown-Plaintiffs did not engage in protected activity because they did not sue the City. Clerk Doyle could not have violated their First Amendment rights because he was not involved in the alleged unconstitutional conduct. ............. 22

LAW & ARGUMENT – CITY OF PONTIAC ........................................... 23

    I.    Rubicon's Due Process claims, Takings claim, and Equal Protection claim fail because Rubicon was not deprived of those rights and the City did not have a policy, custom, or procedure that was the moving force behind the alleged violations. ................................................................................................................ 24

    II.    The City did not deprive the Brown-Plaintiffs of their First Amendment rights, nor did the City have a policy, procedure, or custom that was the moving force behind the alleged violation. ................................................................................... 24

LAW & ARGUMENT – BOTH DEFENDANTS........................................................ 25

   III.    Plaintiffs' alleged damages were not caused by Clerk Doyle or the City........ 25

CONCLUSION ......................................................................................................... 28

# INDEX OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................................. 10

*Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462 (6th Cir. 2021) ....................................................... 17

*Ashford v. Raby*, 951 F.3d 798 (6th Cir. 2020) ............................................... 10, 11

*Baker v. McCollan*, 443 U.S. 443 137 (1978) ...................................................... 25

*Barber v. Charter Twp. of Springfield, Michigan*, 31 F.4th 382 (6th Cir. 2022) ..................... 18

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) .......................... 24

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ................................. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................... 10

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006) .......................................... 10

*City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ........................................... 24

*Cooper v. Parrish*, 203 F.3d 937 (6th Cir. 2000) ........................................... 11, 22

*Courser v. Allard*, 969 F.3d 604 (6th Cir. 2020) ............................................. 12

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146 (6th Cir. 1995) ................................. 10

*EJS Properties, LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012) .......................... 12

*George-Khouri Fam. Ltd. P'ship v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677 (6th Cir. May 26, 2005) .................................... 12, 13, 16, 18

*Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521 (6th Cir. 2023) ............. 19, 20, 21

*GSL Holdings, LLC v. Charter Twp. of Lyon*, No. 21-11664, 2023 WL 4874766 (E.D. Mich. July 31, 2023) ............................................................................................................ 25

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015) ....................................................... 11

*Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007) .......................... 10

*LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995) ..................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............................. 10

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) .............................. 23

*Nikolao v. Lyon*, 875 F.3d 310 (6th Cir. 2017) ........................................................... 12

*Nwaebo v. Hawk-Sawyer*, 83 F. App'x. 85 (6th Cir. 2003) .............................................11, 22

*Palmer v. Montana Dep't of Health & Hum. Servs.*, No. CV 21-38-BLG-SPW-TJC, 2022 WL 457456 (D. Mont. Feb. 15, 2022) ...................................................................... 14

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .................................................. 23

*Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098 (7th Cir. 1995) ................................. 17

*Powers v. Hamilton County Public Defender Com'n.*, 501 F.3d 592 (6th Cir. 2007) ............. 25

*Prater v. City of Burnside, Ky.*, 289 F.3d 417 (6th Cir. 2002) ................................... 16

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590 (6th Cir. 2016) ....................... 17

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) ....................................................... 11

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................ 11

*Shamie v. City of Pontiac*, 620 F.2d 118 (6th Cir. 1980) .......................................... 14

*Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999) ................................................ 23

*Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997) ............................ 15

*Viridis Lab'ys, LLC v. Kluytman*, No. 1:22-CV-283, 2023 WL 5058087 (W.D. Mich. June 20, 2023) ................................................................................................ 14, 15

*Wojcik v. City of Romulus*, 257 F.3d 600 (6th Cir. 2001) ...................................... 12

*Yeo v. State Farm Ins. Co.*, 219 Mich. App. 254; 555 N.W.2d 893 (1996) ......................... 5

**Statutes**

42 USC § 1983 ................................................................................................ 10

Mich.Comp.Laws § 333.27901, *et seq* ............................................................. 2

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................... 9

## MOST CONTROLLING AUTHORITY

*George-Khouri Fam. Ltd. P'ship v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677 (6th Cir. May 26, 2005)

*Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521 (6th Cir. 2023)

*LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995)

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)

*Powers v. Hamilton County Public Defender Com'n.*, 501 F.3d 592 (6th Cir. 2007)

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)

*Thaddeus-X v. Blatter,* 175 F.3d 378 (6th Cir. 1999)

## ISSUES PRESENTED

I.   Whether the procedural due process claim against Clerk Doyle should be dismissed because Plaintiffs have not alleged that they were deprived of a protected property or liberty interest and because he is entitled to qualified immunity as to the claim?

Defendants state          "Yes"

Plaintiffs state          "No"

II.  Whether the substantive due process claim against Clerk Doyle should be dismissed because Plaintiffs have not alleged that they were deprived of a protected property or liberty interest, they have not alleged that he acted in conscience shocking manner, and he is entitled to qualified immunity as to the claim?

Defendants state          "Yes"

Plaintiffs state          "No"

III. Whether the taking claim against Clerk Doyle should be dismissed because Plaintiffs have not alleged that he deprived them of a protected property interest he did not engage in a regulatory taking of their property, and he is entitled to qualified immunity?

Defendants state          "Yes"

Plaintiffs state          "No"

IV.     Whether the Equal Protection claim against Clerk Doyle should be dismissed because he did not treat Rubicon differently than any other similarly situated persons or entities, including that Clerk Doyle is entitled to governmental immunity as to this claim?

Defendants state          "Yes"

Plaintiffs state            "No"

V.      Whether the First Amendment Retaliation claim against Clerk Doyle fails (including whether he is entitled to qualified immunity) because he was not present or personally involved in the alleged unconstitutional actions?

Defendants state          "Yes"

Plaintiffs state            "No"

VI.     Whether the constitutional claims against the City fail as a matter of law because Plaintiffs have not alleged or established an underlying constitutional violation?

Defendants state          "Yes"

Plaintiffs state            "No"

VII. Whether the constitutional claims against the City fail as a matter of law because Plaintiffs have not alleged or identified a policy, procedure, or custom that was the moving force behind the alleged unconstitutional behavior?

Defendants state         "Yes"

Plaintiffs state          "No"


VIII. Whether Rubicon's claimed damages should be dismissed because neither the City nor Clerk Doyle caused them?

Defendants state         "Yes"

Plaintiffs state          "No"

## INTRODUCTION

Rubicon Real Estate Holdings, LLC ("Rubicon") bought property in the City of Pontiac to develop and lease out to marijuana businesses. The City of Pontiac ("City"), re-zoned the area so that Rubicon could do this, and Rubicon started negotiating with several potential tenants. Two potential tenants, Pharmaco and Family Rootz, intended to operate medical marijuana grower and processor businesses, but their applications for medical marijuana facilities licenses were not immediately granted because they failed to provide the City with all the required information. Both potential tenants corrected the problems and received conditional approvals from the City. However, according to Rubicon's Complaint, the real estate development fell through.

Rubicon sues the City and City Clerk, Garland Doyle, seeking damages alleging that the City's failure to approve Pharmaco's and Family Rootz's deficient applications violated Rubicon's rights to procedural and substantive due process, amounted to a regulatory taking, and violated Rubicon's right to equal protection under the law. Rubicon's due process claims and takings claim fails because it was not deprived of a protected property or liberty interest. Rubicon's equal protection claim fails because it was not treated differently than any other similarly situated property owner. Its claimed damages should also be dismissed because the City and Clerk Doyle did not cause them.

Joseph Brown, one of Rubicon's principals, owns another company, Browne Design Consultants, LLC (collectively "Brown-Plaintiffs"). The Brown-Plaintiffs claim that Rubicon brought a lawsuit against the City and that because Rubicon brought that

action, the City retaliated against the Brown-Plaintiffs by telling a potential business partner to not engage in business with Brown or his company. That claim fails because the Brown-Plaintiffs did not engage in an activity protected by the First Amendment (i.e., filing a lawsuit), nor is there evidence of them suffering adverse action. This claim also fails against Clerk Doyle because he was not involved in the alleged retaliatory conduct. This claim fails against the City because the alleged constitutional activity was allegedly done by an unnamed official, not due to a policy or custom of the City.

## STATEMENT OF FACTS

In 2018, the City of Pontiac ("City") adopted a medical marijuana[1] facilities ordinance (MMFO)[2] under the authority of the Medical Marihuana Facilities Licensing Act (MMFLA), Mich.Comp.Laws § 333.27901, *et seq.*. Shortly thereafter, the City amended its zoning ordinance in 2019 to create a Medical Marihuana Overlay District (MMOD) specifying permitted locations of medical marijuana-related uses authorized by the MMFO, such as provisioning centers, safety compliance facilities, secure transporters, growers, and processors. Pontiac Zoning Ordinance (ZO) §§ 3.1101-3.1102.[3] However, medical marijuana uses outside the MMOD are subject to approval by the Planning Commission. ZO § 3.1106. In addition to the overlay districts, all medical marijuana businesses except growers and processors are permissible in areas of

---

[1] Michigan statutes use the spelling "marihuana," although the more conventional spelling is "marijuana." *U.S. v. Caseer*, 399 F.3d 828, 848, fn. 1 (6th Cir. 2005). Defendants use the conventional spelling throughout this brief.
[2] Pontiac Ord. No. 2357(B), codified at Pontiac Code, Article XXX, § 29-1491, *et seq.*
[3] The ordinances are attached as Exhibit 1.

the city zoned as C-1, C-3, C-4, M-1, and M-2, but no more than five provisioning centers are allowed in areas zoned as C-1, C-3, and C-4. ZO § 3.1109. To operate a medical marijuana business, all operators of medical marijuana facilities are required to obtain licenses from the State of Michigan and the City.  ZO § 3.1105. The application process to receive a marijuana license from the City required applicants to provide the City with 31 specific items. City.  Ord. No. 2357(B) § 8. Failure to provide those items could result in an application being deemed deficient or denied.

On March 29, 2019, Rubicon purchased 7 and 9 Glenwood Ave, Pontiac, MI, ("Glenwood property") a multi-parcel property outside the overlay district. Removal & Complaint, ECF No. 1, PageID.8-9, 30-40. Rubicon intended to create a mixed-use development to allow for cannabis cultivation, manufacturing, and processing. *Id.*, PageID.10. The property was zoned as C-1, but to pursue the marijuana business tenants Rubicon wanted, it needed the property re-zoned for C-3 and M-1. *Id.*, ECF 1, PageID.42. Accordingly, on July 3, 2019, Rubicon filed an application to re-zone the property. Ex. 2, Application for Rezoning (Zoning Map Amendment).

On August 8, 2019, one of Rubicon's eventual business targets, Pharmaco, applied to the City for a license to operate a medical marijuana grower and processor at the Glenwood property. Ex. 3, Pharmaco Applications. The applications, however, were missing items required by the City to conditionally approve the applications.

While Pharmaco's application was pending, Rubicon's application for re-zoning went through the re-zoning process. ECF No. 1, PageID.9. On December 18, 2019,

the City Planning Commission met regarding that application and recommended its approval. Ex. 4, Planning Commission Transcript 12-18-19, pp. 60-61. The City Council scheduled a study session regarding the re-zoning for January 14, 2020. Ex. 5, 1-14-2020 Amended City Council Agenda, Item 7.

While the re-zoning process was going on, Family Rootz and Rubicon negotiated a lease for a unit at the Glenwood property. On December 15, 2019, they entered into a letter of intent to enter into a commercial lease agreement. Ex. 6, Family Rootz LOI. Rubicon has not disclosed evidence that the parties ever executed a lease agreement.

The City Council considered Rubicon's proposed zoning change at the January 14, 2020 study session. Ex. 5. The Planning Manager wrote a comprehensive memorandum to the Council introducing the Planning Commission's unanimous recommendation for approval of the proposal and addressing the elements to be considered for approval of rezoning, but the City Council did not formally vote on the re-zoning. Ex. 7, 1-9-2020 Memorandum; Ex. 8, 1-14-2020 City Council Minutes. The Council finally voted on the issue on January 21, 2020 and approved a map amendment and a Conditional Rezoning Agreement (CRA), which provided for Rubicon's desired medical marijuana uses on the property. Ex. 9, Conditional Rezoning Agreement; Ex. 10, 1-21-2020 City Council Minutes. Clerk Doyle signed the City Council's resolution which stated that the approved re-zoning was intended to allow medical marijuana facilities within the relevant area. ECF No. 1, PageID.42. The City sent a letter advising Rubicon that it approved the re-zoning request. Ex. 11, 1-23-2020 Letter.

On February 13, 2020, Pharmaco signed a lease with Rubicon. Ex. 12, Pharmaco Executed Lease. The lease was split into several phases, with Phase 1 being the build out of "Building A." *Id.*, pp. 1-2. Phase 1 did not have a determined start date. *Id.*, pp. 2-3. According to the paperwork, Pharmaco was required to pay rent to Rubicon, the landlord, but the base rent would not be due until the applicable commencement date. *Id.*, p. 6. The Commencement Date Memorandum was never completed. *Id.* Without a commencement date, a condition precedent, Pharmaco's obligations to pay rent never started. *Yeo v. State Farm Ins. Co.*, 219 Mich. App. 254; 555 N.W.2d 893 (1996).

In March 2020, Rubicon signed a letter of intent with HW Glenwood to lease property so that it could operate a Hollywood Market grocery store. Ex. 13, Hollywood Letter. Rubicon has not disclosed a lease signed by HW Glenwood.[4]

On July 15, 2020, Clerk Doyle wrote to Pharmaco indicating its applications were deficient, due to missing information. Ex. 14, 7-15-2020 Pharmaco Grower Letter; Ex. 15, 7-15-2020 Pharmaco Processor Letter. This was common with entities applying to operate marijuana businesses in the City. For example, a couple weeks earlier Clerk Doyle informed PGSH Holdings, LLC of similar deficiencies with its application. Ex. 16 – PGSH Deficiencies Letter.[5] Pharmaco had 14 days from July 15, 2020, to correct the deficiencies in both applications and it supplemented its application. Exs. 14, 15;

---

[4] This entity does not appear as a registered entity in a LARA corporation search.
[5] Clerk Doyle has sent the same types of letters to other applicants: PAAJK Holdings, Nature's Gold, and MistyMee. Ex. 17, PAAJK holdings Deficiency Letter; Ex. 18, Nature's Gold Deficiency Letter; and Ex. 19, MistyMee Deficiency Letter.

Ex. 20, Pharmaco Missing Materials Letter Emails. On July 20, 2020, the City receive applications from Family Rootz, LLC to grow and process marijuana. Ex. 21, Family Rootz Grower Application; Ex. 22, Family Rootz Processor Application.

On January 29, 2021, Clerk Doyle wrote to Pharmaco again and informed it both applications were still deficient due to missing information. Ex. 23, 1-29-2021 Pharmaco Processor Letter; Ex. 24, 1-29-2021 Pharmaco Grower Letter. That same day, he wrote Family Rootz advising that its applications were missing items. Ex. 25, 1-29-2021 Family Rootz Grower Letter; Ex. 26, 1-29-2021 Processor Letter. Both entities supplemented their applications. Ex. 27, 5-21-2021 Pharmaco Processor Letter; Ex. 28, 5-21-2021 Pharmaco Grower Letter; Ex. 29, 5/21/2021 Family Rootz Grower Letter; Ex. 30, 5/21/2021 Family Rootz Processor Letter.

On March 26, 2021, Rubicon and Family Rootz (not the Brown-Plaintiffs) filed a Complaint for Mandamus, Declaratory Relief, specific performance, and seeking damages for tortious interference with business contracts, in Oakland County Circuit Court against the city and the city clerk, claiming that the clerk refused to issue marijuana licenses. Ex. 31, *Rubicon v. City of Pontiac 1* Complaint. The circuit court denied the plaintiffs' motion seeking mandamus.  Ex. 32, Order Denying Mandamus. Rubicon and Family Rootz filed a motion for declaratory relief against the City to enforce the Conditional Rezoning Agreement, a request that the circuit court granted at a hearing on May 17, 2021, by order entered on May 24, 2021. Ex. 33, Order Granting Motion for Declaratory Relief.

On May 21, 2021, City Clerk Doyle sent to Pharmaco and Family Rootz final deficiency notices regarding their applications. Ex. 27; Ex. 28; Ex. 29; Ex. 30. Had Pharmaco and Family Rootz not supplemented their applications again, their applications would have been denied, such as when Clerk Doyle denied MistyMee's and PAAJK Holding's applications due to failure to correct deficiencies. Ex. 34, MistyMee Denial; Ex. 35, PAAJK Holding Denial. Both entities supplemented their applications again, upon which Clerk Doyle issued conditional approvals for all Phamaco's and Family Rootz's applications. Ex. 36, 5-27-21 Family Rootz Conditional Approval Letter Grower; Ex. 37,5-27-21 Family Rootz Conditional Approval Letter Processor; Ex. 38, 6-3-21 Pharmaco Conditional Approval Processor; Ex. 39, 6-3-21 Pharmaco Conditional Approval Grower. The next step in the process was for the applicants to arrange for fire department and building department inspections, obtain certificates of occupancy, comply with   relevant zoning ordinances, provide proof of insurance, and receive licenses from the State of Michigan. See Exs. 36-39.

The Marijuana Regulatory Agency (MRA) (now Cannabis Regulatory Agency) is the state agency tasked with oversight and enforcement of the MMFLA. The MRA performed an unannounced compliance check of Pharmaco's licensed provisioning center in Morenci, MI, on August 7, 2019. Ex. 40, 3/5/2020 Pharmaco Formal Complaint. This inspection occurred *the day before Pharmaco submitted its grower and processor applications to the city of Pontiac on August 8, 2019*.   After that inspection, the MRA continued to investigate Pharmaco for violation of the MMFLA and state regulations.

The MRA issued three (3) formal complaints against Pharmaco on March 5, 2020, December 8, 2020, and August 16, 2021. Ex. 40; Ex. 41, 12/8/2020 Formal Complaint; Ex. 42, 8/16/2021 Formal Complaint. Each of these complaints detailed specific findings of Pharmaco's violations of the MMFLA and MRA regulations at other existing, licensed facilities. At least one of the complaints alleged that Pharmaco "lacks the personal and business probity to operate and maintain a marihuana facility *and is thereby unqualified for licensure* under MCL 333.27402(3)(a)." Ex. 41, p. 3.  So, while Pharmaco was seeking licensure from the city of Pontiac, it was simultaneously defending regulatory complaints that sought to revoke its licensure to engage in the medical marijuana industry in Michigan.

While that regulatory complaint was pending, Rubicon dismissed its lawsuit because "Pontiac has been cooperating and issuing permits, etc. timely." Ex. 43, 10-25-21 Email Rubicon counsel to Pontiac counsel. On October 29, 2021, Rubicon and Family Rootz stipulated to dismiss their lawsuit, because they achieved their primary goal. Ex. 44, *Rubicon v City of Pontiac 1,* 10-29-21 Order of Dismissal.

Sometime after that lawsuit was dismissed, Browne Design allegeed was in discussions with SK Properties to provide property development services. ECF No. 1, PageID.16). Allegedly, SK Properties terminated its relationship with Browne Design. ECF No. 1, PageID.16). The Brown-Plaintiffs claim the City retaliated against them because Rubicon, an entity of which Brown is a principal, was a plaintiff in the circuit court proceedings. ECF No. 1, PageID.15-16. Plaintiffs have not produced a copy of a

contract or other agreement that was allegedly terminated. ECF No. 1, PageID.15-16.

After the Clerk issued conditional approvals to Pharmaco for its grower and processor licenses, Pharmaco was never able to complete the remaining processes because of the regulatory action by the MRA. On February 3, 2022, Pharmaco entered into consent agreements with the MRA on each complaint requiring its principals[6] to divest their interest in the company and banning them from ever managing or operating marijuana businesses in the state of Michigan. Ex. 45, 2/3/22 MRA Consent Order 1; Ex. 46, 2/3/22 MRA Consent Order 2; Ex. 47, 2/3/22 MRA Consent Order 3.

Following these problems with the property and efforts to lease the property to potential tenants, Rubicon was unable to receive a $45,000,000 loan to develop the property. ECF No. 1, PageID.15. After that, Plaintiffs filed this action on January 23, 2023, against the City and Clerk Doyle, nearly two years after the City issued conditional approvals for the marijuana applications of Family Rootz and Pharmaco. Plaintiffs seek damages for alleged violations of: (I) the Equal Protection Clause, (II) their right to substantive and procedural due process, (III) their First Amendment Right to free speech, and (IV) a violation of the Fifth Amendment's takings clause. ECF No. 1.

## STANDARD OF REVIEW

Summary judgment under Rule 56(a) should be granted "if the movant shows

---

[6] The owners of Pharmaco were James Skinner, Stephanie Skinner, Fernando DiCarlo, and Simonetta DiCarlo. Pharmaco's applications identified James Skinner and Fernando DiCarlo as the operators of the proposed facilities in Pontiac.

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact is evidence sufficient for the trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Judgment as a matter of law for the moving party should be entered if the nonmoving party fails to make a sufficient showing on an essential element of his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant satisfies its burden, the burden shifts to the non-movant to show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment is the "put up or shut up" stage of litigation for the non-movant. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, (6th Cir. 1995). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## LAW & ARGUMENT – CLERK DOYLE

Plaintiffs bring their claims through 42 U.S.C. § 1983. When suing a governmental official § 1983, like Clerk Doyle, a plaintiff must show that the official violated his/her/its constitutional rights and that the official is not entitled to qualified immunity. *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020); *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). Qualified immunity protects governmental

officials from reasonable factual mistakes and from reasonable misjudgments in the law. *Ashford*, 951 F.3d at 801. It is a two-pronged inquiry: (1) whether the facts show that the official violated the plaintiff's constitutional right and (2) the right was clearly established and the conduct of the defendant clearly violated the established constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 229 (2009).

For prong (1) Plaintiffs must demonstrate Clerk Doyle was personally involved in a deprivation of their constitutional rights, as well as facts connecting Clerk Doyle's specific conduct to each alleged violation. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x. 85, 86 (6th Cir. 2003); *Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000). To fulfil the second prong, the right at-issue must be defined "'in light of the specific context of the case, not as a broad general proposition.'" *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). This standard requires that the plaintiff show that there was "then-existing precedent" that put the official on notice that his or her conduct was illegal – the standard is so high that it must be "beyond debate" that the officer's conduct violated the Constitution. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 8 (2021); *Ashford*, 951 F.3d at 801. To avoid qualified immunity, there should be case law addressing the specific context of the case which places every reasonable official on notice that the conduct is unconstitutional. *Rivas-Villegas v. Cortesluna*, 595 U.S. at 8.

**I.   Rubicon's procedural due process claim fails because it did not have a property interest in its potential tenants receiving marijuana licenses.**[7]

---

[7] Presumably, the only Plaintiff bringing this claim is Rubicon. If the Brown-Plaintiffs intend on bring this claim, their claim should be dismissed on the merits, as explained in this section. It should also be

Rubicon's procedural due process claim lacks legal merit. To establish a procedural due process claim, the plaintiff must (1) demonstrate it had a life, liberty, or property interest protected by the Due Process clause; (2) it was deprived of that protected interest; and (3) the state did not afford it adequate procedural rights prior to depriving him of the interest. *Courser v. Allard*, 969 F.3d 604, 616 (6th Cir. 2020). Rubicon did not have a protected property or liberty interest in Family Rootz or Pharmaco receiving City of Pontiac marijuana permits.

A person or entity does not have a property interest in something merely because of a unilateral expectation of something. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972); *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). Whether a person has a "property interest" in something has traditionally been a question of state law. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). But the Courts also look at federal constitutional law to determine whether that interest rises to a legitimate claim of entitlement protected by the due process clause. *Id.*

*George-Khouri Fam. Ltd. P'ship v. Ohio Dep't of Liquor Control*, No. 04-3782, 2005 WL 1285677, at *6 (6th Cir. May 26, 2005) (Ex. 48) demonstrates that Rubicon did not

---

dismissed because the Brown-Plaintiffs lack Article III standing. To have standing, the plaintiff must have some sort of stake in the controversy, which is established if the plaintiff: (1) has an injury-in-fact, (2) he suffered an injury-in-fact that was caused by the defendant, and (3) it is likely that the injury will be redressed by a favorable court decision. *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017). The Brown-Plaintiffs could not have suffered an injury-in-fact that can be redressed by a favorable court decision because they did not own the property at issue, nor were they engaged in lease negotiations with Pharmaco, Family Rootz, or Hollywood Market.

have a property interest in its potential tenants receiving marijuana permits. There, George-Khouri Family Limited Partnership acquired property in Cleveland. *Id* at *1. It leased two floors of that property to PDU, Inc to use as a bar and night club, who eventually sold the night club to different owners and transferred the lease to those new owners. *Id.* The Ohio Department of Liquor Control revoked the club's liquor permit due to alleged violations. *Id.* After, the new owners tried to transfer a different liquor permit to the night club, but were unsuccessful. *Id.* Eventually, the night club stopped paying rent for the premises. *Id* at *2. The partnership sued the Commission and its employees under a variety of theories, including a procedural due process theory. *Id.* The district court dismissed all those claims and the Sixth Circuit affirmed. *Id* *1-*2.

The Sixth Circuit explained the holder of the liquor license had the only property interest that was protected by the Due Process Clause. *Id.* at *5. Thus, due process was to be afforded to the liquor license holder, not the partnership. *Id.* The Court explained that it "has never held… that the right to lease one's land to a tenant holding a liquor permit is a property interest protected under the Due Process Clause." *Id.*

Here, Rubicon alleges that it had a property interest in its potential tenants – Pharmaco and Family Rootz – receiving marijuana licenses so that they could operate their businesses. Rubicon, being the landlord, did not have a property interest in those entities' potential licenses, as demonstrated by *George-Khouri Fam. Ltd. P'ship, supra.*

Rubicon's claim suffers another setback as well – Pharmaco and Family Rootz did not have a protected property interest in the licenses they sought, for two more

13

reasons. First, entities that are first time applicants for a permit or license, like a liquor permit, do not have a protected property interest in those permits or licenses and, therefore, are not entitled to procedural due process. *Shamie v. City of Pontiac*, 620 F.2d 118, 120 (6th Cir. 1980). Thus, Pharmaco and Family Rootz did not have a protected property interest in the marijuana licenses they were applying for. Because those entities did not have protected property interests in those, Rubicon logically cannot either.

Second, marijuana permits and licenses are not a protected property interest under the Due Process Clause. The Federal Controlled Substances Act states it is illegal for any private person to possess marijuana for any purpose – marijuana is contraband under federal law. *Viridis Lab'ys, LLC v. Kluytman*, No. 1:22-CV-283, 2023 WL 5058087, at *2 (W.D. Mich. June 20, 2023) (Ex. 49). For that reason, no private person can have a cognizable property interest in a marijuana license, even in states that have decriminalized possession, cultivation, and/or sale of marijuana. *Id.* Therefore, one cannot maintain a due process claim on that basis. *Id*; see also *Palmer v. Montana Dep't of Health & Hum. Servs.*, No. CV 21-38-BLG-SPW-TJC, 2022 WL 457456, at *1 (D. Mont. Feb. 15, 2022) (Ex. 50). Due to there being no protected property interest in the possession, cultivation, and/or sale of marijuana, Rubicon had no protected property interest in having tenants who could operate businesses performing those tasks.

Rubicon does not allege a deprivation of a protected liberty interest either. Whether there is a protected liberty interest in something turns on whether the claimed interest is fundamental and traditionally protected by our society. *LRL Properties v.*

*Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995). For example, when a property owner alleged that a housing authority denied it Section 8 Moderate Rehabilitation funds, the denial of those federal funds did not rise to the level of a fundamental liberty interest. *Id.* at 1108. Here, the relevant players do not have a fundamental liberty interest in the cultivation, possession, or distribution of marijuana. *Viridis*, *supra*. Thus, Rubicon's liberty interest theory fails as well.

As demonstrated above, Rubicon was not deprived of a protected property or liberty interest, or at least an interest that is clearly established to be protected. Therefore, this claim against Clerk Doyle should be dismissed.

## II. Rubicon's substantive due process fails because Rubicon was not deprived a protected property or liberty interest and Clerk Doyle did not act in a conscience shocking manner.[8]

Rubicon's substantive due process claim fails too. There are two categories of substantive due process claims: (1) deprivations of a particular constitutional guarantee and (2) actions that shock the conscience. *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). Rubicon appears to bring both types of claims, but neither is viable. ECF No. 1, PageID.17.[9]

Regarding the deprivation of property substantive due process theory, as with a

---

[8] Presumably, this claim is only being brought by Rubicon. If the Brown-Plaintiffs intend to bring this claim as well, the claim should be dismissed on the merits, as explained in this section, as well as for a lack of standing, as explained in footnote 3.

[9] Paragraph 66 alleges that "Defendants' unwarranted actions against plaintiffs are arbitrary and capricious," which is language consistent with a shocks the conscious theory. Paragraph 64 alleges that Plaintiffs had a property right in developing the property.

procedural due process claim, a substantive due process claim requires that the plaintiff have a constitutionally protected property or liberty interest. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). Because Rubicon did not have a protected property or liberty interest in the marijuana permits that Family Rootz and Pharmaco applied for, this claim fails just as the procedural due process claim fails.

The claims that the Defendants' conduct shocks the conscience also fail. Substantive due process protects against government action that "shocks the conscience," including "arbitrary and capricious" governmental action. *Range v. Douglas*, 763 F.3d 573, 588 n. 6 (6th Cir. 2014). Actions that "shock the conscience" are those that violate the decencies of a civilized society and are "so 'brutal' and 'offensive' that [they do] not comport with the traditional ideas of fair play and decency." *Id.* By way of example, in *George-Khouri Fam. Ltd. P'ship*, Ohio's enforcement of its liquor license laws which led to the revocation of the Partnership's tenant's liquor license did not shock the conscience. *Id* at *5.

Here, the City received permit applications from Family Rootz and Pharmaco and indicated to them that their applications were insufficient because they were missing required items. The City provided those entities multiple opportunities to correct those deficiencies and when they did, the City conditionally approved their applications. These actions by the City, through Clerk Doyle, simply are not conscience-shocking actions, much less conscience-shocking actions that deprive Rubicon of anything. Therefore, this theory should be dismissed as well because Clerk Doyle's actions did not violate Rubicon's substantive due process rights, much less clearly established rights.

### III.  The City did not take any of Rubicon's property.[10]

Rubicon's Takings claim should also be dismissed. Based on the plain language of the Fifth Amendment, a taking claim has the following elements: (1) the plaintiff had private property, (2) it was taken, (3) for a public use, and (4) the plaintiff did not receive just compensation. The first, second, and third elements are not fulfilled.

In regard to the first element, "no takings claim can proceed without a valid property interest." *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998 v. City of Mentor, Ohio*, 11 F.4th 462, 469 (6th Cir. 2021). The term "property" as used in the Fifth Amendment is defined much more narrowly than in the due process clauses. *Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir. 1995). It encompasses real property and personal property, but does not extend to other things like contracts. *Id.* Thus, when a due process claim fails because the plaintiff has not identified a protected property right, a takings claim must necessarily also fail. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016). Here, Rubicon did not have a property interest in its potential tenants receiving marijuana permits. Therefore, Rubicon's claim fails because its constitutional rights were not violated, much less clearly so.

The claim also fails because the City did not take Rubicon's property for public use. There are two types of takings: physical takings and regulatory takings. *Barber v.*

---

[10] It seems that only Rubicon is bringing this claim, but if the Brown-Plaintiffs intend to bring this claim, the claim should be dismissed on the merits, as explained in this section. A claim by the Brown-Plaintiffs could also be dismissed for a lack of standing, as explained in footnote 3.

*Charter Twp. of Springfield, Michigan*, 31 F.4th 382, 387 (6th Cir. 2022). Rubicon's Complaint is does not specify which type of taking claim they are bringing. ECF No. 1, PageID.24-25. However, that does not matter because both theories fail.

First, if Rubicon intended to bring a physical taking claim, it would have to demonstrate that the government physical took possession of property or otherwise occupied it. *Andrews, Tr. of Gloria M. Andrews Tr. Dated Apr. 23, 1998*, 11 F.4th at 469. There are no allegations this occurred, nor is there any evidence that this occurred.

On the other hand, a regulatory taking occurs when: (1) a regulation denies all economically beneficial or productive use of the land or (2) when a regulation places limitations on land that fall short of every economically beneficial use yet still constitutes a taking. *George-Khouri Fam. Ltd.* at *6. Neither theory can be fulfilled when a landlord claims that its tenant did not receive a license to operate its business. *Id.* For instance, if a landlord had a lease agreement with a club that had its liquor license revoked, the landlord cannot maintain a regulatory taking claim because it "knowingly took the risk of buying a property and then leasing it under the expectation that the tenant would maintain the liquor license." *Id.* The tenant is responsible for obtaining or maintaining the applicable business license and any resulting economic impact. *Id.*

Here, the City did not use regulations to deprive Rubicon of any economic benefit of the property. Rubicon knowingly took the risk of buying property that it could lease out, with the intention of renting it to entities that wanted to operate marijuana businesses in Pontiac. It was incumbent on those lessees or potential lessees

18

– not the City – to obtain and maintain their marijuana permits. Even more damning in this case is that Rubicon engaged in negotiations with a non-marijuana business – a grocery store – demonstrating that its property was not negatively impacted by the City's marijuana business application process. There was no regulatory taking.

## IV.   The Equal Protection claim fails because Rubicon was treated the same as any other similarly situated entity.[11]

Rubicon alleges that the City and Clerk Doyle selectively targeted their property for enforcement of the City's internal procedures in violation of the Fourteenth Amendment. ECF No. 1, PageID.19). Rubicon claims that this selective targeting resulted in it being treated differently than other property owners who were similarly situated to plaintiffs and that plaintiffs constitute a class-of-one. ECF No. 1, PageID.20. This theory fails as a matter of law.

Under the Fourteenth Amendment's Equal Protection Clause, "no state shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. To prevail on a class-of-one equal protection theory, a plaintiff must demonstrate that: (1) the City intentionally treated it differently from others similarly situated and (2) that there was no rational basis for the difference in treatment. *Green Genie, Inc. v. City of Detroit, Michigan*, 63 F.4th 521, 527 (6th Cir. 2023). To fulfill the first element, the plaintiff must provide either direct evidence of discrimination or

---

[11] This claim seems to only be brought by Rubicon, but if the Brown-Plaintiffs intend to bring it too, they should be dismissed for the reasons set forth in this section. They also lack standing, as articulated in footnote 3.

circumstantial evidence of discrimination. *Id.* at 527-528. There is no direct evidence of discrimination in this case; thus, Rubicon must present circumstantial evidence. *Id.* In a class-of-one case, this is established when the plaintiff presents evidence that the City's treatment of it was a stark outlier from an otherwise consistent pattern of favorable treatment in similarly situated cases. *Id.* at 528. That is, Rubicon must demonstrate evidence that it was intentionally singled out. *Id.*

For instance, in *Green Genie, Inc.*, 63 F.4th at 524, the plaintiff, Green Genie, Inc., applied to operate a medical marijuana facility in Detroit. When Detroit received an application, its Building, Safety Engineering, and Environmental Department (BSEED) would assess whether the applicant complied with the locational specifications set forth in the City code. *Id.* The Code prohibited medical marijuana facilities being in drug-free zones. *Id.* The City received Green Genie's application, but BSEED denied the application because the proposed facility was located in a drug-free zone. *Id.* Other applicants also had this problem, but two other applicants fared better. *Id.* One applicant, Detroit Rootz, originally applied to operate a facility outside a drug-free zone and obtained approval, but then joined its tax parcel with another one that was within the drug-free zone. *Id.* Despite that, the City did not revoke the medical marijuana permit. *Id.* The other entity, Mack Wellness, applied for a permit and received it despite being in a drug-free zone. *Id.* However, the evidence showed that the approval was due to the City miscalculating the distance of the facility to a school zone. *Id.* The City did not learn of its error until Green Genie filed suit. *Id.*

Despite this evidence, Green Genie failed to fulfill the first element of its equal protection claim. *Id.* at 528. The evidence showed that the City applied the same methods of measurement to each comparator. *Id.* The Court acknowledged that Detroit Roots and Mack Wellness fared better than Green Genie, but that was due to improper application of the City's test, not the test itself. *Id.* At best, Green Genie had demonstrated that the City had sloppily administered its own test. *Id.* For that reason, Green Genie failed to show that its application was a "stark outlier" from others. *Id.*

Rubicon's claim similarly fails because there is no evidence that the City treated it differently than other entities. Rubicon theorizes the City, through Clerk Doyle, did not approve Family Rootz and Pharmaco's marijuana permit applications because of their relationship with Rubicon. That is not what happened. Neither Family Rootz nor Pharmaco provided all the necessary information for immediate, conditional approval of their applications. This resulted in Clerk Doyle advising them of the missing information and giving each entity time to supplement their applications. Both entities supplemented their applications and eventually received conditional approval. Clerk Doyle sent the same letters to other applicants who also failed to provide the required information and even denied applications when those entities did not appropriately supplement their applications. In sum, there is no evidence that Family Rootz or Pharmaco were treated differently than any other applicant, much less that Rubicon was treated differently than any other property owner attempting to lease property to a marijuana business. Plaintiffs' claim of an equal protection violation therefore fails as a

matter of law. Further, Rubicon's equal protection claim against Clerk Doyle should be dismissed because he did not violate Rubicon's clearly established rights. Clerk Doyle is therefore entitled to qualified immunity from this claim as well.

**V.    The Brown-Plaintiffs did not engage in protected activity because they did not sue the City. Clerk Doyle could not have violated their First Amendment rights because he was not involved in the alleged unconstitutional conduct.**[12]

The Brown-Plaintiffs alleges that during a meeting between SK Properties and City representatives, including the Mayor, representatives of SK Properties were told that if they wanted their project in the City to be approved, they needed to get rid of Brown's company and claim these statements were made because of Rubicon's lawsuit against the City. ECF No. 1, PageID.16). The Brown-Plaintiffs admit Clerk Doyle was not present for this. Ex. 51, Browne Discovery Responses, No. 7. Thus, Clerk Doyle should be dismissed from this count because he was not involved in the alleged unconstitutional actions. *Nwaebo, supra; Cooper, supra.*

Even if one were to analyze the merits of this claim, the claim still fails. To prevail on a First Amendment retaliation claim the plaintiffs must establish that (1) they engaged in protected conduct; (2) an adverse action was taken against them that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3)

---

[12] Presumably, only the Brown Plaintiffs are bringing this claim. However, if Rubicon is brought this claim it should be dismissed because Clerk Doyle did not participate in the alleged constitutional violation, as demonstrated in this section. It could also be dismissed because it lacks standing – it did not suffer an injury-in-fact that was caused by the City or Clerk Doyle. The only injury claimed is that Browne Design – not Rubicon – did not receive a contract with SK Properties.

there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiffs' protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Here, the Brown-Plaintiffs did not engage in protected conduct because they were not parties to the state court lawsuit – Rubicon and Family Rootz were. Also, the Brown-Plaintiffs will not present evidence demonstrating that any city official took adverse action against them that caused a contract to be terminated. In fact, the Brown-Plaintiffs have not disclosed evidence of any contract with SK Properties. The Brown-Plaintiffs will not present any evidence fulfilling any element required for this claim, nor present evidence that any city official violated clearly established law.

## LAW & ARGUMENT – CITY OF PONTIAC

Plaintiffs' claims against the City also fail. A governmental entity cannot be held liable under a § 1983 claim solely because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). Rather, to bring a claim against a municipality, the plaintiff must demonstrate that an official policy or custom of the municipality was the moving force behind the deprivation of the plaintiff's constitutional rights. *Id.* An "official policy" refers to formal rules or understandings that are intended to establish fixed plans of action to be followed under similar circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Liability only attaches where a decision-maker possesses final authority to establish municipal policy with respect to the action ordered. *Id.* For instance, that a particular official – even a

23

policy making official – has discretion in exercising a particular function does not, without more, give rise to municipal liability based on an exercise of that discretion. *Id.* at 482. On the other hand, a custom is an act that is not formally approved, but so widespread as to have the force of law. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997). The plaintiff must also establish that he/she/or it suffered a constitutional violation – failure to establish this is fatal to a plaintiff's claim. *City of Los Angeles v. Heller,* 475 U.S. 796 (1986).

## I. Rubicon's Due Process claims, Takings claim, and Equal Protection claim fail because Rubicon was not deprived of those rights and the City did not have a policy, custom, or procedure that was the moving force behind the alleged violations.[13]

Rubicon's Due Process, Taking, and Equal Protection claims against the City should be dismissed because, as demonstrated above, Rubicon's constitutional rights were not violated. Irrespective of that, there is no allegation that the City has an unconstitutional policy or custom that was the moving force behind the alleged constitutional violations. Therefore, these claims should be dismissed against the City.

## II. The City did not deprive the Brown-Plaintiffs of their First Amendment rights, nor did the City have a policy, procedure, or custom that was the moving force behind the alleged violation.[14]

The Brown-Plaintiffs cannot bring a First Amendment retaliation claim against the City because, as mentioned above, they did not file the Oakland County lawsuit

---

[13] As noted above, it appears that only Rubicon is bringing this claim. If the Brown-Plaintiffs are, these claims fail for the same reason Rubicon's do and because of a lack of standing.

[14] Again, this First Amendment claim appears to be brought by the Brown-Plaintiffs only. However, even if Rubicon brings it, the claim fails on the merits and Rubicon lack standing to assert this claim.

against the City and will not present evidence of adverse action that caused injury. They also do not identify in their complaint who made the allegedly unconstitutional comments. Without such evidence, there is no evidence that a policy or custom of the City that requires City officials to tell entities to not hire entities that sue the City.

## LAW & ARGUMENT – BOTH DEFENDANTS

### III.   Plaintiffs' alleged damages were not caused by Clerk Doyle or the City.

The Court can also dismiss the Plaintiffs' alleged damages. In § 1983 actions, the plaintiff must fulfill the traditional tort concepts of causation. *Baker v. McCollan*, 443 U.S. 443 137, 142 (1978); *Powers v. Hamilton County Public Defender Com'n.*, 501 F.3d 592, 608 (6th Cir. 2007). Thus, the plaintiff must prove the alleged unconstitutional action was the (1) cause in fact of the alleged injury and (2) the legal cause of the alleged injury. *Powers*, 501 F.3d at 608-609. For example, in *GSL Holdings, LLC v. Charter Twp. of Lyon*, No. 21-11664, 2023 WL 4874766, at *1 (E.D. Mich. July 31, 2023) (Ex. 52), GSL claimed that it suffered lost rents and lost property value because a township would not grant it "speculative building status" (special tax treatment under Michigan law), and sought damages due to a tenant's termination of a lease before the denial of that status. *Id.* However, those claimed damages were dismissed from that lawsuit because GSL agreed to terminate the lease agreement, despite having no legal obligation to do so under the terms of the lease. *Id.* The court there expressly found that the Township's actions could not be the proximate cause of the tenant's lease termination. *Id.*

Rubicon claims it was unable to develop its property because the City initially

denied the Pharmaco's and Family Rootz's applications as incomplete. There is no logical connection between those two issues. Family Rootz, according to the records produced by Rubicon, never entered into a lease agreement with Rubicon. The duties under Pharmaco's lease never began because Rubicon and Pharmaco never agreed on a commencement date. Hollywood Market also never entered into a lease agreement with Rubicon. Causation is not established due to the lack of enforceable contracts.

Furthermore, any claim that the City or Clerk improperly delayed approvals of the applications of Pharmaco and Family Rootz is belied by the facts that both of those entities continued to participate in the application process and corrected the deficiencies when notified by the clerk to do so. Rubicon has represented, although not by any admissible evidence[15], that Pharmaco terminated its lease on June 18, 2021, more than two weeks *after* Clerk Doyle issued conditional approval of Pharmaco's applications. Furthermore, Rubicon claims that Family Rootz terminated its lease on September 17, 2021, over three months *after* its conditional approvals from the city clerk. And, Rubicon's counsel who prosecuted the *Rubicon v. City of Pontiac 1* claim acknowledged when seeking dismissal of that case that the city had issued its permits in a timely manner. Ex. 43 ("Our client Rubicon has decided that since Pontiac has been

---

[15] As ostensible evidence of Pharmaco's termination of the lease on June 18, 2021, Plaintiff has provided a document called "Affidavit of Fernando DiCarlo." Ex. 54. That document is undated, purportedly "signed" digitally, but not signed before a notary public, and does not contain the required language as made under the penalty of perjury to qualify as a declaration under 28 U.S.C. § 1746(2). Nevertheless, Defendants assume for purposes of this motion that Pharmaco terminated its lease on the date stated.

cooperating with issuing permits, etc. timely, that it does not make sense to keep this case open any longer.")

Neither Pharmaco nor Family Rootz ever notified the City of any issue with proceeding with their applications, and contrary to any such claim, continued to correct deficiencies identified by the clerk. Ex. 53, Affidavit of Garland S. Doyle, ¶¶ 7-9, 15. Moreover, Pharmaco's existing licenses from the MRA were in jeopardy at that time, a fact of which Pharmaco never informed the city. *Id.*, ¶ 11. Had Clerk Doyle known of those proceedings, he would have considered Pharmaco ineligible for marijuana approvals from the City. *Id.*, ¶ 13. Accordingly, if he had known this information during the process, Clerk Doyle would have denied Pharmaco's applications. *Id.* If he had learned of it after issuing the approvals, the clerk would have revoked those approvals. *Id.*, ¶ 14. Pharmaco would never have been able to operate medical marijuana facilities at the Glenwood property.

In any event, Pharmaco was not eligible for a license from the state MRA. There is no evidence that Pharmaco would have obtained a license from the state of Michigan in light of the disciplinary action taken as reflected in Exhibits 45-47. Therefore, no action of the City of Pontiac could have caused Pharmaco to terminate its lease, when Pharmaco knew it was likely to lose its licensure status.[16]

Finally, there is no causal connection between the Brown-Plaintiffs' alleged

---

[16] The MRA complaints and pending revocation of Pharmaco's licenses also explains why Pharmaco was not a party-plaintiff to the first lawsuit filed in *Rubicon v. City of Pontiac 1*, Ex. 31.

damages and City action either because the Brown-Plaintiffs alleged their contract with SK Properties was terminated but have not produced evidence that such a contract existed.

## CONCLUSION

Plaintiffs' claims here suffer from either a dearth of evidence to support them, or the extant evidence contradicts the claims alleged in the Complaint. There is no genuine issue of material fact, and Defendants are entitled to summary judgment as a matter of law. Therefore, Defendants, City of Pontiac and Garland S. Doyle, respectfully request that this Honorable Court enter summary judgment in full in favor of both Defendants.

s/ Michael T. Berger (P77143)
ROSATI SCHULTZ JOPPICH & AMTSBUECHLER PC
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
mberger@rsjalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF eFiling system which will send notification of such filing to all parties of record.

ROSATI, SCHULTZ, JOPPICH &
AMTSBUECHLER, P.C.

/s/ Sheila Bodenbach
Assistant to Michael T. Berger