# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**RUBICON REAL ESTATE
HOLDINGS, LLC, BROWNE
DESIGN CONSULTANTS, LLC,
and JOSEPH BROWN**

     **Plaintiffs,**

**v.**

**CITY OF PONTIAC, MICHIGAN
and GARLAND S. DOYLE,
jointly and severally,**

     **Defendants.**

**Case No. 2:23-cv-10439**

**HONORABLE DAVID M. LAWSON
DISTRICT JUDGE**

**HONORABLE CURTIS IVY, JR.
MAGISTRATE JUDGE**

---

# RESPONSE OF PLAINTIFFS TO
# <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

## **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

INDEX OF AUTHORITIES…………………………………………… iii

COUNTER-STATEMENT OF THE ISSUES PRESENTED…………. vi

INTRODUCTION…………………………………………………… 1

COUNTER-STATEMENT OF PERTINENT FACTS………………… 1

STANDARD OF REVIEW…………………………………………. 7

DISCUSSION………………………………………………………. 7

I.  RUBICON HAS STATED A LEGALLY SUPPORTED
PROCEDURAL DUE PROCESS CLAIM……………………… 10

II.  RUBICON HAS STATED A LEGALLY SUPPORTED
SUBSTANTIVE DUE PROCESS CLAIM……………………… 15

III. THERE EXIST GENUINE ISSUES OF MATERIAL FACT
WHETHER DEFENDANTS TOOK RUBICON'S PROPERTY… 18

IV. RUBICON WAS NOT TREATED THE SAME BY
DEFENDANTS AS SIMILARLY-SITUATED ENTITIES……… 22

V.  THERE EXISTS A GENUINE ISSUE OF MATERIAL
FACT WHETHER DEFENDANTS RETALIATED AGAINST
PLAINTIFFS FOR EXERCISING THEIR FIRST
AMENDMENT RIGHTS………………………………………… 25

VI. THE CITY IS LIABLE FOR THE DEPRIVATION OF
RUBICON'S CONSTITUTIONAL RIGHTS…………………… 28

   A.  *The City Violated Rubicon's Constitutional Rights And
   Has An Unconstitutional Policy, Custom or Procedure*……. 29

B.   *The City Deprived The Brown Plaintiffs Of Their First Amendment Rights and Has An Unconstitutional Policy, Custom or Procedure*..…………………………………..   30

VII.   DEFENDANTS ARE LIABLE FOR PLAINTIFFS' DAMAGES..   30

# **INDEX OF AUTHORITIES**

**_Cases_**                                                                                                    **Page(s)**

*Amen v. City of Dearborn*, 718 F.2d 789 (6th Cir. 1983)                                  19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)                                    7

*Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002)                                           25

*Board of Regents v. Roth,* 408 U.S. 564 (1972)                                           14

*Buckeye Comm. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627
    (6th Cir. 2001)                                                                      15

*Burlington N & SFR Co v White*, 548 U.S. 53 (2006)                                       27

*Chernin v. Welchans*, 844 F.2d 322 (6th Cir. 1988)                                       14

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006)                                    7

*Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985)                         14

*D.D. v. Scheeler*, 645 F. App'x 418 (6th Cir. 2016)                                      9

*Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996)                                   29

*Eckerman v. Tenn. Dept. of Safety*, 636 F.3d 202 (6th Cir. 2010)                         25

*Everson v. Leis,* 556 F.3d 484 (6th Cir. 2009)                                           9

*F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412 (1920)                                 22

*George-Khouri Fam. Ltd. Partnership v. Ohio Dep't of Liquor Control*                     13, 19

*Green Genie, Inc. v. City of Detroit*, 63 F.4th 521 (6th Cir. 2023)                      23

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)                                               8

*Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)                           18, 19

*Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404
    (6th Cir. 1997)    15

*Malley v. Briggs,* 475 U.S. 335 (1986)    8

*McKay v. United States*, 199 F.3d 1376 (Fed. Cir. 1999)    18

*Med Corp., Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002)    10

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978)    14

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)    28, 29

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)    10

*Parate v. Isibor*, 868 F.2d 821 (6th Cir. 1989)    15

*Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992)    17

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)    29

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978)    19

*Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*,
    640 F.3d 716 (6th Cir. 2011)    7

*Pritchard v. Hamilton Twp. Board of Trs.,* 424 Fed.Appx. 492
    (6th Cir. 2011)    9

*PruneYard Shopping Center v. Robins,* 447 U.S. 74 (1980)    19

*Saucier v. Katz*, 533 U.S. 194 (2001)    8

*Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006)    22

*Scott v. Harris*, 550 U.S. 372 (2007)    8

*Siggers–El v. Barlow,* 412 F.3d 693 (6th Cir. 2005)    25

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997)          29

*Thaddeus–X v. Blatter,* 175 F.3d 378 (6th Cir.1999)          25

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005)          28

*Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011)          27, 28

*United States v. General Motors Corp.,* 323 U.S. 373 (1945)          19

*Zinermon v. Birch*, 494 U.S. 113 (1990)          16

## ***Statutory Authority***

M.C.L. 125.3405          8

M.C.L. 333.26421 *et seq*          1

M.C.L. 333.27101, *et seq*.          1

## ***Court Rules***

Fed. R. Civ. P. 56(a)          7

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

1.     Is City Clerk Garland Doyle entitled to qualified immunity where Rubicon's right to its rezoning was clearly established?

2.     Does Rubicon Real Estate Holdings, LLC ("Rubicon") have a legally supported claim for deprivation of its procedural due process rights?

3.     Does Rubicon have a legally supported claim for deprivation of its substantive due process rights?

4.     Do genuine issues of material fact exist as to whether defendants took Rubicon's property?

5.     Does Rubicon Real Estate Holdings, LLC ("Rubicon") have a legally supported claim for deprivation of its procedural due process rights?

6.     Was Rubicon deprived of its rights to equal protection of the laws under the Fourteenth Amendment because defendants treated Rubicon differently than other entities who were similarly-situated to Rubicon?

7.     Do genuine issues of material fact exist as to whether defendants retaliated against Browne Design Consultants, LLC and Joseph Brown for exercising their First Amendment rights?

8.     Is the City responsible for the deprivation of Rubicon's constitutional rights?

9.     Are defendants responsible for plaintiffs' damages?

## INTRODUCTION

Plaintiffs Rubicon Real Estate Holdings, LLC ("Rubicon"), Browne Design Consultants, LLC ("Browne Design") and Joseph Brown submit this response in opposition to the motion of defendants the City of Pontiac, Michigan ("the City") and City Clerk Garland S. Doyle for summary judgment.

## COUNTER-STATEMENT OF PERTINENT FACTS

In 2008, Michigan voters approved the medical use of marijuana, which is now known as the Michigan Medical Marihuana Act ("MMMA"), M.C.L. 333.26421 *et seq.* The MMMA prompted the Michigan Legislature in 2016 to enact the Michigan Medical Marihuana Facilities Licensing Act ("MMFLA"), M.C.L. 333.27101, *et seq.*, which established procedures for regulating and licensing medical marijuana facilities, so that patients who were qualified under the MMMA could obtain safe medical marijuana for their treatments.

This case involves property in the City of Pontiac that plaintiff Rubicon intended to develop and lease out for medical marijuana facilities.   On March 29, 2019, Rubicon entered into a purchase agreement for 7 and 9 Glenwood Avenue, Pontiac, Michigan 48326 ("Glenwood Property") (Ex. 1, Ex. 2, ¶2).  Under the purchase agreement, Rubicon was to "undertake in good faith to take all such steps necessary to submit all required plans and applications to the City of Pontiac necessary for a marijuana license as soon as reasonably practicable" (Ex. 1 at 6).

Rubicon submitted an application for a zoning map amendment on July 3, 2019 (Defendants' Motion for Summary Judgment ["DMSJ"], Ex. 2, ECF No. 57-3, PageID.641-45). The City's Planning Commission voted at a public hearing on December 18, 2019 to approve the zoning map amendment (Ex. 2, ¶5). The City Council adopted the Planning Commission's recommendations on January 21, 2020, passing Resolution 20-29 (DMSJ, Ex. 10, ECF No. 57-11, PageID.782-792). Resolution 20-29 amended the City's zoning map so that the Glenwood Property was now zoned C-3 Corridor Commercial and M-1 Light Manufacturing with CR Conditional Rezoning, which now allowed Rubicon to have medical marijuana facilities on the Glenwood Property.

On January 23, 2020, Vern Gustafsson, the City Planning Manager, sent correspondence to Rubicon stating that the Pontiac City Council had approved the rezoning request at the January 21, 2020 meeting and that the City Attorney will obtain the City signatures on the Conditional Rezoning Agreement (DMSJ, Ex. 11, ECF No. 57-12, PageID.793-794). The January 23, 2020 correspondence from Planning Manager Gustafsson stated that approved medical marihuana permits were required for each medical marihuana facility from the City (*Id.*). The parties later executed the Conditional Rezoning Agreement ("CRA") (DMSJ, Ex. 9, ECF No. 57-10, PageID.770-78), which was effective as of January 21, 2020. Rubicon then closed on the Glenwood Property on February 27, 2020 (Ex. 2, ¶8).

Upon approval of and in reliance on Resolution 20-29, and once its purchase of the Glenwood Property was completed, Rubicon entered into agreements to finance the development of the parcels and leases and letters of intent with tenants for portions of the Glenwood Property (Ex. 2, ¶¶9-10), including the planned anchor tenants of the Glenwood Property, Family Rootz, LLC ("Family Rootz"), Pharmaco, Inc. ("Pharmaco") and HW Glenwood ("Hollywood Market").

Pharmaco applied for its permit on August 8, 2019 (DMSJ, Ex. 3, ECF No. 57-4, PageID.647-678). Pharmaco had prequalified for a medical marijuana license from the State of Michigan (Ex. 3). The first notice Pharmaco received that its grower and processor applications were allegedly deficient was not sent until July 15, 2020, almost a year after the applications were submitted (DMSJ, Ex. 14, ECF No. 57-15, Page ID.855; Ex. 15, ECF No. 57-16, PageID.858). It took the City another five months, until January 29, 2021, before it issued second deficiency letters (DMSJ, Ex. 23, ECF No. 57-24, PageID.885; Ex. 24, ECF No. 57-25, PageID.889).

While defendants contend that there was no commencement date for Pharmaco's lease, this is incorrect. The commencement date for the three phases started 30, 60 and 90 days after Rubicon closed on its purchase of the Glenwood Property (DMSJ, Ex. 12, ECF No. 57-13, PageID.797).

Family Rootz applied for its permit on July 20, 2020 (DMSJ, Ex. 22, ECF No. 57-23, PageID.880-83). The City did not send its first notice that the application was

deficient until more than six months later, on January 29, 2021 (DMSJ, Ex. 25, ECF No. 57-26, PageID.893; Ex. 26, ECF No. 57-27, PageID.899).

From 2020 forward, Doyle made it clear that he would not issue permits for applicants on Rubicon's property because he claimed they were not permitted under the City's Zoning Ordinance (Ex. 4).

On January 7, 2021, Rubicon's then-counsel sent correspondence to the City Council demanding that the City take action, citing the potential financial losses being caused by Doyle's position that there could not be any medical marijuana businesses on the Glenwood Property (Ex. 5).

On February 16, 2021, the City Council held a meeting which included a discussion on the Glenwood Property (Ex. 6). As part of Rubicon's presentation, conceptual drawings were shown that depicted what the project would look like once the development was completed (Ex. 7). Doyle submitted a PowerPoint Presentation that confirmed that he refused to recognize that medical marijuana businesses were allowed on the Glenwood Property (Ex. 4). The minutes of the City Council meeting state:

> Interim City Clerk Garland Doyle informed the City Council that it would be illegal for him to issue a license to any medical marihuana grower or processor applicant at the Glenwood site. Ordinance 2363 does not permit growers or processors to be licensed outside of the Cesar Chavez or Walton Blvd Overlay Districts.

(Ex. 8 at 2).  The City Council took no action on the matter at the February 16, 2021 meeting (*Id*.).

On March 15, 2021, Thomas Welch, President of HW Glenwood, LLC, wrote to Rubicon expressing concerns about the delays being caused by the City, and that if the City continued to delay the project, then he would have to withdraw Hollywood Market from being part of the development (DMSJ, Ex. 13, ECF No. 57-14, PageID.853).

On March 26, 2021, Rubicon and Family Rootz filed a lawsuit in the Oakland County Circuit Court, seeking mandamus and declaratory relief, as well as other relief (DMSJ, Ex. 31, ECF No. 57-32, PageID.915-989).  On May 21, 2021, the state court granted Rubicon's and Family Rootz' motion for declaratory judgment, and ordered that the City and its officials "shall forthwith implement the terms of the Conditional Rezoning Agreement", "issue preliminary approval of all pending Pharmaco, Inc and Family Rootz applications for grower and processor licenses and permits," and declared the that Glenwood Property "complies with the zoning ordinance…"  (DMSJ, Ex. 33, ECF No. 57-34, PageID.994-997).

However, the City did not "forthwith" comply with the May 21, 2021 order. Instead, on the very same day this order was issued, defendants sent correspondence to Family Rootz (DMSJ, Ex. 29, ECF No. 57-30, PageID.909) and Pharmaco (DMSJ,

Ex. 28, ECF No. 57-29, PageID.906) that their applications were deficient and did not to issue the approvals in the May 21, 2021 order.

On June 18, 2021, Pharmaco terminated its lease with Rubicon (DMSJ, Ex. 54, ECF No. 57-55, PageID.1099-1100).  Family Rootz terminated its lease with Rubicon on September 11, 2021 (Ex. 9).  Hollywood Market refused to proceed further with its lease (Ex. 2), and the remaining tenants terminated their leases or refused to proceed further under their letters of intent (*Id*.).

After Rubicon had filed the state court lawsuit, SK Properties retained Browne Design to provide design and other services for a project it was developing in the City (Ex. 2).  SK Properties' principal, Tzvi Koslowe, met with Mayor Tim Greimel, Councilwoman Melanie Rutherford and former City Planning Manager Vern Gustafsson to discuss the project (Ex. 2, Ex. 10).  Mayor Greimel told Koslowe that if SK Properties wanted to obtain approval for its development, Shores at Crystal Lake, then it needed to terminate its relationship with Browne Design, because Joseph Brown, a principal of Rubicon, had sued the City (*Id*.).  Councilwoman Rutherford did not contradict or oppose this statement (*Id*.).  Koslowe then advised Brown that he had to terminated his agreement to retain Brown and Browne Design because of the mayor's statement (Ex. 2).

In their brief, defendants state "Following these problems with the property and efforts to lease the property to potential tenants, Rubicon was unable to receive a

$45,000,000 loan to develop the property" (DMSJ, ECF No. 57, PageID.601).  This is true.  Rubicon had leased out the property to several tenants, but because of the defendants' actions, they terminated the leases.  As Rubicon's counsel stated in his January 7, 2021 letter to the City, the lender was refusing to disburse funds for the development because of the cloud caused by defendants' refusal to recognize that medical marijuana businesses were allowed on the Glenwood Property (Ex. 5).

## STANDARD OF REVIEW

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

## DISCUSSION

Defendants first address the claims against Doyle and contend that he is entitled to qualified immunity.  Under the qualified immunity doctrine, public

officials can be held liable for violating a person's constitutional rights where the right was clearly established at the time of the alleged improper conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs submit that their constitutional rights were clearly established at the time they were violated by Doyle and thus he is not entitled to qualified immunity.

Qualified immunity involves a two-step analysis. *Scott v. Harris*, 550 U.S. 372, 377 (2007). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* The second step is to determine whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts have made it clear that qualified immunity is not granted to those who are "plainly incompetent" or "knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

Defendants do not discuss any reason or provide any analysis as to why they believe he has qualified immunity. It appears from the arguments made later in the brief that Doyle's claim of qualified immunity is based on defendants' argument that there was no constitutional violation.

Plaintiffs submit that Doyle has violated their constitutional rights by refusing to follow the terms of the CRA into which the City and Rubicon entered and refusing to recognize that the property had be rezoned to allow medical marihuana facilities.

Doyle could not have reasonably believed that the CRA, which the City's attorney drafted, was illegal.

Conditional rezonings are governed under M.C.L. 125.3405.  There is no language in M.C.L. 125.3405 that provides that a local unit of government must amend the zoning ordinance before a conditional rezoning can be valid.  Doyle's position was not reasonable.

In *D.D. v. Scheeler*, 645 F. App'x 418, 427 (6th Cir. 2016), the Sixth Circuit, in rejecting a claim of qualified immunity by a police officer who asserted that he was unaware of the law, stated:

> Though the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir. 2009) (citation omitted), "a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 819.  It may "seem unduly harsh to have an expectation that law enforcement officers should know the intricacies of criminal statutes"; however, an ignorance of the law defense in the qualified immunity context "might foster ignorance of the law or, at least, encourage feigned ignorance of the law." *Pritchard v. Hamilton Twp. Board of Trs.,* 424 Fed.Appx. 492, 506, 506 n. 9 (6th Cir. 2011) (citation omitted).

At the February 16, 2021 City Council meeting, Doyle claimed he had 23 years of municipal government experience, has a Master of Public Administration and a Graduate Certificate in Local Government Management (Ex. 4).  Thus, Doyle should have known what the law was regarding the effect of a conditional rezoning and that it was not something he could unilaterally declare was not valid.  Doyle is not entitled to qualified immunity.

## I.   RUBICON HAS STATED A LEGALLY SUPPORTED PROCEDURAL DUE PROCESS CLAIM

The Due Process Clause provides that a holder of a property right or liberty interest may not be deprived of that interest without the government affording the interest holder adequate and proper procedural rights - notice and an opportunity to be heard by an impartial decision-maker.  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).  In their brief, defendants state that a plaintiff must "(1) demonstrate it had a life, liberty or property interest protected by the Due Process clause; (2) it was deprived of that protected interest; and (3) the state did not afford it adequate procedural rights prior to depriving him of the interest" (DMSJ, ECF No. 57, PageID.604).  Rubicon has met each element which defendants set forth.

As defendants have admitted, Rubicon owned the Glenwood Property.  Upon the City Council's approval of the resolution and execution of the CRA, the Glenwood Property was zoned C-3 Corridor Commercial and M-1 Light Manufacturing with CR Conditional Rezoning, which now allowed Rubicon to have medical marijuana facilities on the Glenwood Property.  It cannot be disputed that Rubicon had a property interest in the Glenwood Property with the approved conditional rezoning and a liberty interest in developing its property in accordance with the CRA.  Rubicon thus has met the first element of this claim.

Defendants have not disputed the facts relating to the second element of Rubicon's claim – that Rubicon was deprived of its property and liberty interest. Despite the fact that Rubicon's property was zoned for medical marijuana facilities since January 21, 2020, Doyle from that date forward refused to allow Rubicon and its tenants to move forward with actions related to medical marijuana facilities because he believed they were "illegal" (Ex. 7 at 2). Despite Rubicon's property and liberty interests in using its land for the purpose for which it had been re-zoned, Doyle's refusal to recognize that re-zoning and his actions and statements to Rubicon's tenants and developers and investors deprived Rubicon of that property interest. Rubicon thus has met the second element of the claim.

As to the third element of Rubicon's claim – that the state did not afford it adequate procedural rights prior to depriving it of its interest, the facts show that Rubicon was afforded no procedural rights before being deprived of its property and liberty interests. The City took no action to rein in Doyle or force him to recognize the conditional rezoning it had approved. There was no hearing at which Rubicon's re-zoning was revoked. There was no impartial decision maker. Yet when the City Council on February 16, 2021 faced Rubicon's assertion that it had been deprived of its property interest in the Glenwood Property being zoned for medical marijuana facilities, a deprivation to which Doyle admitted at that same meeting, the City Council and its administration took no action to stop the deprivation. Rubicon was

compelled to file suit to obtain a declaratory judgment on May 21, 2021 that the City must comply with the CRA and that Rubicon's property complied with the zoning ordinance as to medical marijuana facilities, an order with which defendants did not immediately comply.  But by that time, almost a year and a half after the execution of the CRA, the irreversible damage to Rubicon had already been done.

Rubicon thus has met the three elements of a procedural due process claim – it had a property interest of which it was deprived without being afforded procedural rights.  Rubicon has set forth a justiciable procedural due process claim.

Defendants do not address Rubicon's claim.  Instead, defendants argue that all of plaintiffs' constitutional claims, including the procedural due process claim, fail as a matter of law because Rubicon does not have a property interest in its tenants receiving medical marijuana permits. But that is not the issue in this case.  As the complaint sets forth, Rubicon had a property interest in the re-zoned property that allowed medical marijuana facilities (*e.g.*, ECF No. 1, PageID.14, 16-17 (¶¶47, 62, 64-65)).  Doyle openly admitted that he would not approve anything for Rubicon's property not because of anything to do with the tenants or their applications, but because he refused unilaterally to allow any medical marijuana facilities on Rubicon's property despite the City Council resolution and the CRA (Exs. 6, 7 at 2). This deprivation caused Rubicon injury.

Defendants cited to an unpublished Sixth Circuit case, *George-Khouri Fam. Ltd. Partnership v. Ohio Dep't of Liquor Control*, No. 04-3782 (DMSJ, Ex. 48, ECF No. 57-49, PageID.1062-1068), which they contend demonstrates that Rubicon did not have a property interest in potential tenants receiving marijuana permits. But that is not the holding of that case. In that case, the plaintiff property owner leased its property to a liquor license holder, Mark Danzey, whose license thereafter was revoked for violations. Danzey sought to transfer another license to plaintiff's property. Under the state administrative code, the Department could not consider Danzey's request for a year after the final action on the revocation of his prior license. The plaintiff, who could not find other license holders who wanted to lease its property, claimed that the administrative code deprived it of procedural due process. The court rejected this claim because the plaintiff did not hold the property interest at issue – the liquor license, Danzey did.

That case is factually and legally dissimilar to the case at bar. Rubicon did not assert that it had some property interest in its tenants' permits. Doyle made clear to all of Rubicon's tenants that he would not process anything relating to medical marijuana facilities on Rubicon's property. Because Doyle took away that which had been granted to Rubicon – the right to have medical marijuana facilities on its property – because he unilaterally and wrongly decided it was illegal, Doyle refused to allow anything related to the Glenwood Property to proceed further.

The due process clause imposes constraints on governmental decisions which deprive individuals of property interests.  Defendants do not address that under principles established in prior United States Supreme Court cases, the Sixth Circuit in published decisions has held that a landlord's interest or expectation in receiving monies due under a rental agreement is a "property interest" within the meaning of the Fourteenth Amendment.  *Chernin v. Welchans*, 844 F.2d 322, 325 (6th Cir. 1988) (citing *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985); *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1 (1978); *Board of Regents v. Roth,* 408 U.S. 564 (1972)).

Defendants do not dispute that Rubicon is a property owner, and that Rubicon intended to lease portions of its property to Pharmaco, Family Rootz and other tenants.  Rubicon entered into leases and/or letters of intent with several tenants after approval of its conditional rezoning.  As the case law in the preceding paragraph establishes, Rubicon had a property interest in receiving rents from those tenants.

Defendants do not discuss Doyle's actions in refusing to issue permits and discouraging tenants from submitting applications because of his insistence that the CRA was illegal and the Planning Commission needed to amend the zoning ordinance.  There is no authority that provides that a zoning ordinance is required to be amended in order for a conditional rezoning agreement to be valid (Ex. 5).  There was no factual or legal support for Doyle's assertion that the CRA was illegal.  Thus,

defendants' actions in refusing to process permits and discouraging others from applying based on Doyle's opinion deprived Rubicon of its property interest in the form of its anticipated rental income once the permits were issued.

Rubicon submits that defendants' motion as to its procedural due process claim should be denied, as defendants have not addressed the actual claim set forth in the complaint. Rubicon had a property interest in the Glenwood Properties which were zoned for medical marijuana uses and a liberty interest in developing that property. Rubicon was deprived of these interests because defendants refused to recognize that there could be medical marijuana businesses on the Glenwood Property. Rubicon was deprived of its property interest and liberty interest without being afforded procedural rights. Contrary to defendants' argument, Rubicon has set forth a legally-supported procedural due process claim. Rubicon therefore respectfully requests that this Court deny defendants' motion.

## II. RUBICON HAS STATED A LEGALLY SUPPORTED SUBSTANTIVE DUE PROCESS CLAIM

The Fourteenth Amendment's Due Process Clause guarantees that property and liberty interests may not be taken away by a governmental entity without due process. *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 409 (6th Cir. 1997); *Parate v. Isibor*, 868 F.2d 821 (6th Cir. 1989). Substantive due process involves "the right not to be subject to arbitrary or capricious action." *Buckeye Comm. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 641 (6th Cir. 2001). The Due

Process Clause bars arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Zinermon v. Birch*, 494 U.S. 113, 125 (1990).

Rubicon had a protected property right and liberty interest in the Glenwood Property, which had been re-zoned to permit medical marijuana businesses on that property. Defendants deprived Rubicon of those rights and interests when they refused to allow medical marijuana businesses on that property because Doyle decided, notwithstanding the evidence to the contrary, that having medical marijuana businesses on the Glenwood Property would be illegal. Defendants' actions in refusing to recognize that medical marijuana businesses could be located on the Glenwood Property were arbitrary and capricious.

While defendants argue that Rubicon's substantive due process claim fails because Rubicon did not have a protected interest in its tenants' permits, that is not the gravamen of Rubicon's claim. The arbitrary and capricious actions of which Rubicon complains are defendants' refusal to allow medical marijuana businesses on the Glenwood Property despite the rezoning which permitted such businesses. Rubicon had protected property rights and liberty interests in the property, developing that property, and, as the case law in the preceding section shows, its anticipated rental income from its tenants. Defendants acted arbitrary and capriciously in depriving Rubicon of these property rights and liberty interests. The

City was aware that Doyle's asserted reasons for the delay were without legal basis, as evidenced by the January 7, 2021 correspondence by Rubicon's then-counsel and Doyle's own presentation (Ex. 4, Ex. 5).  Rubicon and Family Rootz were compelled to file suit in state court and obtain a declaratory judgment.  By then, the damage was done, as Rubicon's tenants for the Glenwood Property had decided to terminate their leases (Ex. 2).  Given these facts, defendants' actions cannot be seen as anything other than arbitrary and capricious.

Defendants also claim that their conduct did not "shock the conscience." Rubicon submits that an elected official and City that deliberately defy a conditional rezoning agreement and City Council resolution and state court declaratory judgment should, in fact, shock the conscience.  Defendant's wrongful actions were not pointing out deficiencies; it was everything that Doyle himself set forth in his presentation to the City – that there could not be any medical marijuana businesses on Rubicon's property (Ex. 4).  While the Sixth Circuit in *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992), recognized that "applying the 'shock the conscience' test in an area other than excessive force is problematic," this case would seem to be one that did shock the conscience.

Defendants' reference to the holding in *George-Khouri Fam. Ltd. Partnership* is misplaced.  The court in that case did not make a determination as to a "shock the

conscience" standard.  It said simply that penalizing permit holders who offend liquor laws is a conceivable legitimate governmental interest.

Rubicon had a protected property right and liberty interest in the Glenwood Property, which had been re-zoned to permit medical marijuana businesses on that property.  Defendants deprived Rubicon of those rights and interests when they refused to allow medical marijuana businesses on that property. Defendants' actions in refusing to recognize that medical marijuana businesses could be located on the Glenwood Property were arbitrary and capricious.  Rubicon has set forth a legally-supported substantive due process claim.  Rubicon therefore respectfully requests that this Court deny defendants' motion.

## III.   THERE EXIST GENUINE ISSUES OF MATERIAL FACT WHETHER DEFENDANTS TOOK RUBICON'S PROPERTY

The Takings Clause, which applies to the individual states via the Fourteenth Amendment, provides that the government may not take citizens' private property without just compensation.  A regulatory taking, such as the one implicated here, "occurs when the Government prevents a [property owner] from making a particular use of the property that otherwise would be permissible."  *McKay v. United States*, 199 F.3d 1376, 1382 (Fed. Cir. 1999) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992)).

The Supreme Court has developed two tests to determine whether a regulatory taking has occurred.  The first requires courts to assess whether a regulation "denies

*all* economically beneficial or productive use" of the plaintiff's land. *Lucas*, 505 U.S. at 1015 (emphasis added) (citations omitted).  The second requires courts to examine: (1) the "economic impact of the regulation on the [plaintiff][;]" (2) "the extent to which the regulation has interfered with [the plaintiff's] distinct investment-backed expectations[;]" and (3) "the character of the governmental action"—for example, "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (internal citation omitted).

For Fifth Amendment purposes, the definition of property is broad, encompassing the entire group of rights incidental to ownership.  *Amen v. City of Dearborn*, 718 F.2d 789, 794–95 (6th Cir. 1983) (citing *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 82 n. 6 (1980); *United States v. General Motors Corp.,* 323 U.S. 373, 377–78 (1945)).  The government must deny the owner an essential use of his property.  *PruneYard Shopping Center,* 447 U.S. at 82.

Here, defendants were well aware of Rubicon's intention to develop the Glenwood Property as a site for tenants to grow, process and sell medical marijuana. The City entered into a CRA specifically so that Rubicon could bring that intention into fruition.  Yet the City, through Doyle, refused to recognize the rezoning, claiming

that the zoning ordinance did not permit medical marijuana facilities on the Glenwood Property, despite the fact that the City Council resolution and the CRA which provided that medical marijuana facilities on the Glenwood Property were permitted. It was not until Rubicon and Family Rootz sued defendants and obtained the Order compelling defendants to issue the approvals, did Doyle act, and even then, delayed issuing the court-ordered approvals. However, by then the damage was done, and Rubicon's tenants all terminated their leases.

Thus, defendants deprived Rubicon the essential use of the Glenwood Property. The City's only authority was through its zoning ordinance, and whether the site plans submitted by Pharmaco and Family Rootz complied with the zoning ordinance. The City only had the power to limit the number of facilities allowed within its borders, where they could be located, and other considerations that are typical in zoning ordinances, such as setback requirements, whether sufficient parking existed, and hours of operation.

The City argues that Pharmaco could not have obtained a license, due to violations as alleged by the State of Michigan. However, the Consent Orders required certain principals of Pharmaco to lower their percentage interests in the company and placed certain restrictions on Pharmaco's Morenci, Michigan licenses (DMSJ, Ex. 45, ECF No. 57-46, PageID.1040; Ex. 46, ECF No. 57-47, PageID.1044; Ex. 47, ECF No. 57-48, PageID.1052). The Consent Orders did not revoke any of Pharmaco's licenses.

Further, the Consent Orders were all issued on February 3, 2022, long after Pharmaco had terminated its lease with Rubicon.  The City never claims that it even was aware of the State's investigations of Pharmaco at the time its applications were pending. Indeed, the City issued conditional approvals to Pharmaco on June 3, 2021, seven months before the Consent Orders issued (DMSJ, Ex. 37, ECF No. 57-38, PageID.1009; Ex. 38, ECF No. 57-39, PageID.1012).

The economic impact of defendants' actions was devastating to Rubicon, who spent $7 Million to purchase the Glenwood Property, and was in discussions with other entities to finance the development and construction of the Glenwood Property. Its lender would not disburse a $45 million loan for development on the site because of the issues with defendants (Ex. 5).  Defendants' actions significantly interfered with Rubicon's investment-backed expectations, as all Rubicon's tenants terminated their leases. The character of the City's action was without legal cause, as there was no basis on which Doyle could believe the conditional rezoning was not valid.

The evidence shows that defendants did not allow Rubicon to use its property, which was zoned for medical marijuana businesses.  While defendants assert that Rubicon had obtained Hollywood Market, a non-marijuana business, as a tenant, so there could not be any negative impact from defendants' actions, Rubicon could not build the facility for Hollywood Market because its lender would not release

construction funds based on defendants' actions repudiating the rezoning of the property (Ex. 2, Ex. 5).

At the least there exist genuine issues of material fact whether Doyle's position and defendants' actions were justified.  Accordingly, Rubicon respectfully requests that this Court deny defendants' motion, as there exist genuine issues of material fact sufficient to preclude summary judgment.

## IV.   RUBICON WAS NOT TREATED THE SAME BY DEFENDANTS AS SIMILARLY-SITUATED ENTITIES

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.  The purpose of the Equal Protection Clause is to "protect[] against invidious discrimination among similarly-situated individuals ....," thereby ensuring that all similarly-situated people are treated alike.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  The Equal Protection Clause simply prevents governmental decision makers from treating differently persons who are in relevant respects alike.  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Scarbrough,* 470 F.3d at 260.

Rubicon maintains that defendants deprived it of its rights to equal protection by treating it differently than others who were similarly situated to Rubicon.  While defendants focus on the selective enforcement or targeting, this is not the entirety of Rubicon's claim.

As Rubicon has set forth, defendants treated other businesses who were situated on properties zoned for medical marijuana facilities differently than they treated Rubicon.  Doyle's own presentation establishes this fact, by making a distinction between those businesses on properties in what he termed was the "Overlay District" and Rubicon's Glenwood Property (Ex. 4).  While the Glenwood Property was not in an Overlay District, it was – through the City Council Resolution and CRA – rezoned for medical marijuana businesses, as the Oakland County Circuit Court recognized in its declaratory judgment (DMSJ, Ex. 33, ECF No. 57-34, PageID.995-997).  There was no basis for defendants to claim that no medical marijuana businesses could operate on the Glenwood Property.  Other properties which were zoned to allow medical marijuana businesses were allowed to proceed with those businesses.

This case differs greatly from that to which defendants cite – *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521 (6th Cir. 2023).  In that case, the plaintiff attempted to place a marijuana business in a drug-free zone, which was forbidden.  The plaintiff complained about the method of measurement, but under any test, it was in a drug-free zone and thus could not operate as a marijuana business.

In this case, Rubicon's property was in the correct zoning for a medical marijuana business.  There was no justification for Doyle to maintain that he thought the rezoning was wrong – he was factually and legally wrong.  Doyle's refusal to allow anything relating to a medical marijuana business on the Glenwood Property

violated Rubicon's clearly established rights on that property. While defendants state that Family Rootz and Pharmaco "eventually received conditional approval" (DMSJ, ECF 57, PageID.613), they neglect to state that the approvals occurred only after the state court ordered defendants to issue the approvals.

Defendants also targeted Rubicon for selective treatment different than that afforded to similarly situated businesses. A review of the letters sent to Rubicon's tenants demonstrates the different treatment. The letters sent to Pharmaco stated that Pharmaco had 14 days to provide additional information or its application would be determined to be deficient and would be denied (DMSJ, Ex. 14, ECF 57-15, PageID.855-866; Ex. 15, ECF 57-16, PageID.858-859). The letters sent to PGSH Holdings, LLC, PAAJK Holdings and Nature's Gold, who were on different properties, provides them 21 days and has different language regarding what would occur if the applicants did not provide additional information (DMSJ, Ex. 16, ECF 57-17, PageID.861; Ex. 17, ECF 57-18, PageID.863; Ex. 18, ECF 57-19, PageID.865).

Family Rootz and Pharmaco disagreed with defendants' allegations of deficiencies and Rubicon sought through its state court lawsuit a declaratory judgment approving their applications. Upon review of the facts, which showed that defendants had no reason not to approve the applications, the state court entered an order which compelled plaintiffs to approve the applications (DMSJ, Ex. 33, ECF-57-34, PageID.995-997).

Rubicon submits that the evidence demonstrates that defendants violated its rights to equal protection by treating it differently than similarly-situated entities and that there are, at least, genuine issues of material fact regarding this disparate treatment.  Accordingly, Rubicon respectfully requests that this Court deny defendants' motion, as there exist genuine issues of material fact sufficient to preclude summary judgment.

## V.   THERE EXISTS A GENUINE ISSUE OF MATERIAL FACT WHETHER DEFENDANTS RETALIATED AGAINST PLAINTIFFS FOR EXERCISING THEIR FIRST AMENDMENT RIGHTS

A plaintiff alleging First Amendment retaliation "must prove that 1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct."  *Siggers–El v. Barlow,* 412 F.3d 693, 699 (6th Cir. 2005) (citing *Thaddeus–X v. Blatter,* 175 F.3d 378, 393 (6th Cir.1999) (*en banc*)).

The Sixth Circuit has determined that filing a lawsuit "is clearly protected activity under the First Amendment."  *Eckerman v. Tenn. Dept. of Safety*, 636 F.3d 202, 208 (6th Cir. 2010); *see also Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (finding that the act of filing a lawsuit is protected conduct).

Defendants do not dispute that Rubicon sued the City, and defendants include as exhibits to their summary judgment motion the complaint and two orders from the

lawsuit (DMSJ, Ex.s 31, 32 and 33). They do not dispute that Brown was a managing member of Rubicon (Ex. 2). Thus, the first prong of a First Amendment retaliation claim has been satisfied.

The next prong is whether defendants took an adverse action against plaintiffs at least in part because of the protected conduct. As the certification of Joseph Brown states under penalty of perjury, his company, Browne Design, contracted with SK Properties for services related to SK Properties' Shores at Crystal Lake project in the City (Ex. 2). However, during a meeting with City Mayor Tim Greimel, City Councilwoman Melanie Rutherford, former City Planning Manager Vern Gustafsson and Tzvi Koslowe, a principal of SK Properties, on August 22, 2022, Mayor Greimel told Koslowe that if SK Properties wanted to obtain approval of its Shores at Crystal Lake project, then Koslowe needed to terminate the relationship between SK Properties and Browne Design Consultants, LLC (Ex. 2; Ex. 10). City Councilwoman Rutherford did not contradict or oppose Mayor Greimel's statement (*Id*.). Koslowe then terminated the contract with Browne Design and Brown (Ex. 2).

Defendants argue that because neither Brown nor Browne Design Consultants, LLC were parties to the lawsuit filed by Rubicon and Family Rootz, then there could be no retaliation against them. However, the City knew that Joseph Brown was a principal of Rubicon. The City also knew that Brown was a principal in Browne Design Consultants, LLC.

In *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), the United States Supreme Court considered a claim of so-called "third party retaliation" under Title VII.  The plaintiff, Eric Thompson, and his fiancée, Miriam Regalado, were both employed by the defendant.  Regalado filed a charge against the defendant alleging sex discrimination, and three weeks later, Thompson was fired.  562 U.S. at 172. Thompson alleged that his firing was in retaliation for Regalado's protected activity. *Id.*  The Court noted that it had already held that Title VII's anti-retaliation provision prohibited any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 174 (quoting *Burlington N & SFR Co v White*, 548 U.S. 53, 68 (2006).  Given that, the Court thought the third-party claim was clearly included in the statute: "We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired." 562 U.S. at 174.

While *Thompson* involved an adverse employment action, the protected activity that Thompson engaged in was protected by the First Amendment.  The analogy to the facts in this case is clear.  Here, even though Brown was not a named plaintiff in the lawsuit Rubicon filed against the City, he was a principal of Rubicon.  Brown is also the principal of Brown Design Consultants, LLC.

While plaintiffs have not found any case where the holding in *Thompson* was adopted in First Amendment retaliation cases, there is no reason why the logic behind

the *Thompson* Court's decision should not apply in a First Amendment retaliation claim.  If a corporation sues a municipality, and the municipality retaliates against an officer of the corporation for filing the lawsuit, even though the officer of the corporation was not named as a plaintiff in the lawsuit, then the municipality should be held liable for the retaliation.  A contrary ruling would grant to the government free reign to retaliate against individuals affiliated with, but not a party to, others who have exercised their First Amendment rights by seeking redress of grievances in court.

Therefore, plaintiffs submit that they have stated a valid First Amendment retaliation claim.  At the very least, plaintiffs submit that a genuine issue of material fact exists whether defendants retaliated against Brown and Browne Design Consultants, LLC.  Accordingly, plaintiffs respectfully request that this Court deny defendants' motion for summary judgment.

## VI.   THE CITY IS LIABLE FOR THE DEPRIVATION OF RUBICON'S CONSTITUTIONAL RIGHTS

While the City contends that municipal liability must be based on an unlawful policy, that is not the entirety of the doctrine that has evolved from the holding in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  The Sixth Circuit has held in *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005), that a municipality may be held liable under one of at least four recognized theories:

> There are at least four avenues a plaintiff may take to prove the
> existence of a municipality's illegal policy or custom. The plaintiff can
> look to (1) the municipality's legislative enactments or official agency
> policies; (2) actions taken by officials with final decision-making
> authority; (3) a policy of inadequate training or supervision; or (4) a
> custom of tolerance or acquiescence of federal rights violations.

*Id.* at 429 (citing *Monell; Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986);

*Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Claiborne*

*County*, 103 F.3d 495, 507 (6th Cir. 1996)). A single decision is sufficient to give rise

to *Monell* liability.  As the Court stated in *Pembaur*:

> it is plain that municipal liability may be imposed for a single decision
> by municipal policymakers under appropriate circumstances.  No one
> has ever doubted, for instance, that a municipality may be liable under
> § 1983 for a single decision by its properly constituted legislative
> body -- whether or not that body had taken similar action in the past or
> intended to do so in the future -- because even a single decision by
> such a body unquestionably constitutes an act of official government
> policy.  But the power to establish policy is no more the exclusive
> province of the legislature at the local level than at the state or
> national level.  *Monell's* language makes clear that it expressly
> envisioned other officials "whose acts or edicts may fairly be said to
> represent official policy," *Monell, supra,* at 436 U.S. 694, and whose
> decisions therefore may give rise to municipal liability under § 1983.

475 U.S. at 480 (some citations omitted).

**A.** ***The City Violated Rubicon's Constitutional Rights And Has An***
***Unconstitutional Policy, Custom or Procedure***

Defendants argue that with respect to Rubicon's constitutional claims,

Rubicon's rights were not violated, and there is no allegation that the City has an

unconstitutional policy or custom.  As to the first point, as Rubicon sets forth in the

preceding sections of this brief, the City did violate Rubicon's constitutional rights.

As to the second point, Doyle was cloaked with final decision-making authority for

the issuance of approvals for medical marijuana facilities and could block

development such as that proposed by Rubicon.  The City Council adopted Doyle's

position when it took no action during the February 16, 2021 meeting.  Thus, Doyle's

actions in refusing to recognize the rezoning of Rubicon's property was an official

policy in which the City acquiesced.

> **B.**     ***The City Deprived The Brown Plaintiffs Of Their First Amendment Rights and Has An Unconstitutional Policy, Custom or Procedure***

Regarding the First Amendment claim by Browne Design and Brown,

defendants simply state that they were not parties to the state court case.  As discussed

in the First Amendment section of this brief, retaliation can be exhibited through third-

parties who are affiliated with the person who filed the lawsuit.  Since Joseph Brown

is a principal of both Rubicon and Browne Design, there is a sufficient nexus between

Rubicon and Browne Design to establish a First Amendment retaliation claim.

Additionally, plaintiffs did identify the person who made the unconstitutional

statement, and that statement was agreed with by other City officials.  Thus, the City,

through its officials, adopted a policy that it would not approve a developer's project

if that developer retained a third party who was affiliated with an entity that sued the

City.

## VII.   DEFENDANTS ARE LIABLE FOR PLAINTIFFS' DAMAGES

Defendants argue as to both defendants that plaintiffs' alleged damages were not caused by the defendants.  Defendants cite to an unpublished decision where the plaintiff agreed to terminate its lease, whereby the court found no proximate cause between the township's actions and the lease termination.  That case is distinguishable, as there is no allegation in this case, even by defendants, that Rubicon agreed to terminate its tenants' leases.

Defendants argue that there were no enforceable leases between Rubicon and either Family Rootz and Hollywood Market.  As noted above, Hollywood Market was waiting for the City to approve the applications of Pharmaco and Family Rootz before it would commit to a long-term lease.  Further, if Family Rootz did not have intent to lease out a portion of the Glenwood Property, then it would not have submitted an application for a facility located there.  While the City claims that neither Pharmaco or Family Rootz ever notified the City of any issues regarding the processing of their applications, this is belied by the fact that Family Rootz was a named plaintiff in the Oakland County Circuit Court lawsuit.

As to Pharmaco, defendants incorrectly assert that their contract with Rubicon never became effective because they could not agree upon a Commencement Date.  As noted above, the Commencement Date was 30, 60 and 90 days after Rubicon closed on its purchase of the Glenwood Property (DMSJ, Ex. 12, ECF No. 57-13, PageID.797).  While defendants argue that Pharmaco

would not have been able to obtain a State license, the Consent Orders between Pharmaco and the State clearly provide that only certain principals of Pharmaco had to reduce their ownership of the company and there were no license revocations.  Those orders were not entered until 2022, long after Pharmaco terminated its lease with Rubicon.

Principals of both Pharmaco and Family Rootz have submitted certifications that they terminated their respective leases with Rubicon due to the delays in the processing of their applications by defendants.  Thus, at the very least, a genuine issue of material fact exists as to whether defendants' actions were the proximate cause of plaintiffs' injuries.  Accordingly, plaintiffs respectfully request that this Court deny defendants' motion for summary judgment, and allow this matter to proceed to trial.

Respectfully submitted,

/s/ Cindy Rhodes Victor
CINDY RHODES VICTOR (P33613)
The Victor Firm, PLLC
29777 Telegraph Road
Suite 2410
Southfield, Michigan  48034
(248) 905-3990
cvictor@victorfirm.com

Dated:      December 20, 2024      Attorneys for Plaintiffs
Rubicon Real Estate Holdings, LLC,
Browne Design Consultants, LLC
and Joseph Brown